GRIFFIS, J.,
for the Court:
¶ 1. Manda Griffin filed a wrongful-death claim against North Mississippi Medical Center (NMMC) in the Lee County Circuit Court. She alleged that NMMC was vicariously liable for the negligence of a nurse that caused her mother’s death. Griffin now appeals the circuit court’s directed verdict that was entered in favor of NMMC. We find no error and affirm.
*672 FACTS
¶ 2. Gracie Stephens was a sixty-one-year-old diabetic with kidneys that no longer functioned. Because of her total renal failure, she required dialysis. Initially, she dialysed by way of an abdominal peritoneal dialysis catheter. However, the abdominal site became infected, and doctors determined it was necessary to switch to a hemodialysis catheter that would be placed in her jugular vein. Surgeon Dr. Terry Pinson was called upon to install the catheter. During the operation, Dr. Pin-son inadvertently punctured Stephens’s carotid artery. He attempted to repair the carotid artery with stitches, placed the catheter in the jugular vein, and closed the site. Stephens was then transferred to the recovery room.
¶ 3. In the recovery room, Sherry Cren-shaw was the nurse assigned to care for Stephens. According to testimony, while Stephens was in the recovery room, her blood pressure and blood volume steadily fell to dangerously low levels, which was consistent with internal bleeding from an ineffectively repaired carotid artery. Cren-shaw reported Stephens’s falling blood pressure to anesthesiologists in the recovery room, and some treatments were administered. However, the treatments were only temporarily effective, and Stephens’s condition continued to deteriorate. Approximately three-and-a-half hours after Stephens first entered the recovery room, Dr. Pinson was called. Dr. Pinson determined it was necessary to reopen the surgical site. However, before that could be done, Stephens went into cardiac arrest and suffered extensive brain damage. She died approximately seven days later.
¶ 4. Stephens’s daughter, Griffin, filed a wrongful-death claim against Dr. Pinson. Later, the complaint was amended to add NMMC as a defendant. The circuit court granted summary judgment in favor of Dr. Pinson, and this Court affirmed that judgment on appeal. Griffin v. Pinson, 952 So.2d 963, 963 (¶ 1)' (Miss.Ct.App.2006). The case proceeded to trial with NMMC as the sole defendant. At the close of Griffin’s evidence, the circuit court granted NMMC’s motion for a directed verdict. It is from this judgment that Griffin now appeals.
STANDARD OF REVIEW
¶ 5. On appeal, we conduct a de novo standard of review of a motion for a directed verdict. Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992). When deciding whether the granting of a motion for a directed verdict was proper by the lower court, this Court considers the evidence in the light most favorable to the non-moving party and gives that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial. Id. If the favorable inferences have been reasonably drawn in favor of the non-moving party so as to create a question of fact from which reasonable minds could differ, then the motion for a directed verdict should not be granted, and the matter should be given to the jury. Id.
ANALYSIS
¶ 6. Griffin’s theory at trial was that Crenshaw was negligent in failing to timely recognize the signs of Stephens’s blood loss and negligent in failing to timely warn Dr. Pinson, or another surgeon, of such blood loss and that Crenshaw’s negligence resulted in a fatal delay of surgical intervention that would have stopped the bleeding and saved Stephens’s life. Griffin alleged NMMC was vicariously liable for Crenshaw’s negligence. The circuit court’s directed verdict was based on the court’s finding that Griffin had failed to present sufficient evidence on the issue of *673 proximate cause. Griffin contends this was error.
¶ 7. The Mississippi Supreme Court articulated the requirements for a prima facie case in medical-malpractice suits, stating:
A prima facie case for medical malpractice must be made by proving the following elements: (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant. Drummond v. Buckley, 627 So.2d 264, 268 (Miss.1993) (citing Burnham v. Tabb, 508 So.2d 1072, 1074 (Miss.1987)). “When proving these elements in a medical malpractice suit, expert testimony must be used. Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Banner v. Gorman, 605 So.2d 805, 809 (Miss.1992) (citing Latham v. Hayes, 495 So.2d 453 (Miss.1986)).
Hubbard v. Wansley, 954 So.2d 951, 956-57 (¶ 12) (Miss.2007).
¶ 8. The first two elements — duty and breach of duty — are not at issue here. Griffin submitted expert testimony of a nurse to establish duty and breach of duty. This evidence is not challenged on appeal. Instead, the element of proximate cause is the crux of this appeal.
¶ 9. This case considers a legal theory called the “lost chance of recovery.” To establish the element of proximate cause in a lost-chance-of-recovery case, where the allegation is that a medical provider failed to administer proper care and that the failure allowed an already existing injury to deteriorate, the plaintiff must prove that had proper care been administered then it is probable, or more likely than not, that a substantially better outcome would have resulted. Id. at 964 (¶ 42). Stated differently, the plaintiff must show that, absent malpractice, there is a greater than fifty-percent chance that a substantially better result would have followed. Id.
¶ 10. Griffin’s theory was basically that Crenshaw had failed to take appropriate action to arrest Stephens’s bleeding. It is important to note that the actions of Dr. Pinson in surgery are not at issue, since he was granted summary judgment and is no longer a defendant and that Crenshaw did not assume responsibility until Stephens entered the recovery room already suffering from the punctured, and possibly ineffectively repaired, carotid artery. Thus, the essential allegation to be proved was that proper care was not administered and that failure to administer that care allowed an already existing injury to deteriorate.
¶ 11. To establish her prima facie case, Griffin had to offer expert testimony to establish that had Crenshaw timely recognized the blood loss and timely warned a surgeon, the surgeon would have intervened, and that intervention would have, more likely than not, saved her mother’s life.
¶ 12. Griffin offered the expert testimony of Dr. Richard Truly. Dr. Truly was accepted by the circuit court as an expert in emergency and family medicine. Dr. Truly claimed no expertise in surgery and was not accepted as an expert in that field.
¶ 13. Dr. Truly testified, as to causation, that “[m]y opinion is that the — that the negligence on behalf of the hospital contributed and proximately caused her death by the mere fact that there was [failure to recognize the signs of blood *674 loss].” Dr. Truly did not testify as to what a surgeon would have done had he been notified of the blood loss or what the odds of success would have been had a surgeon timely intervened. Dr. Truly was not an expert in surgery, so any testimony to that effect would have drawn an objection. Indeed, Dr. Truly could not testify as to what a surgeon would have done, nor could he testify that timely surgical intervention would have, more likely than not, saved Stephens’s life. Thus, Dr. Truly did not offer sufficient evidence to support an essential element of Griffin’s prima facie case in this lost-chance-of-recovery case.
¶ 14. The circuit court decided that Dr. Truly’s testimony was insufficient to create a jury question as to proximate cause in a lost-chance-of-recovery case. We agree. Finding no error, we affirm.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., ISHEE, ROBERTS, CARLTON and MAXWELL, JJ„ CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND LEE, P.J. BARNES, J., NOT PARTICIPATING.