ISHEE, J., for the Court:
¶ 1. This appeal arises from a jury trial in the Pike County Circuit Court finding in favor of Masumi Lee, for and on behalf of the Estate of Robert E. Lee, in a medical-negligence case and awarding $20,000 in economic damages and $5,000 for pain and suffering. McComb Nursing and Rehabilitation Center (McComb) appeals, arguing Lee failed to establish proximate causation and that the trial court erred by denying its motion for a directed verdict. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On January 25, 2005, Robert E. Lee was admitted to McComb for rehabilitation and physical therapy. Prior to admission, Lee had experienced a fall at home, which required hospitalization. Lee also suffered from mental and physical decline, general weakness, problems with his gait, and difficulty standing without assistance. Due to his medical problems, Lee’s family decided they could not provide adequate care and admitted him into McComb. At the time he was admitted, Lee needed help with most daily activities, including: bathing, showering, eating, and getting up and down. Upon Lee’s admission, McComb generated an admission assessment and a plan of care to address his needs adequately. Nevertheless, Lee fell from his bed shortly before midnight on January 30, 2005. He fractured his left hip as a result of the fall. Masumi, for and on behalf of Lee’s estate, filed a complaint on January 16, 2007, alleging, among other claims, that McComb was negligent in caring for Lee and that Lee’s hip injury was a result of McComb’s negligence.
¶ 3. The jury trial began on June 29, 2010. During the trial, the jury heard testimony from Susan Lofton, a clinical nurse specialist in community health with a focus in geriatrics. She testified as an expert in the field of nursing. Lofton explained the procedure nursing homes use to evaluate patients when admitted and how correctly to determine a patient’s *778 risk of falling. She provided testimony regarding her examination of McComb’s admission assessment and stated Lee was not properly evaluated for a fall-risk assessment. Indeed, no fall-risk assessment was done. According to Lofton, the plan of care did not include a risk for falls, was not specific enough in the instructions, and deviated from the standard of care. She then testified about the correct fall-risk assessment for Lee and elaborated on the measures that should have been taken under the proper standard of care. Based on Lee’s intermittent confusion, incontinence, trouble with gait and balance, medication, and hypertension, she found he was at a high risk for falls. A bed and chair alarm should have been used to minimize the risk of falling. The alarm gives nurses the ability to reach a patient before he or she falls. Padding should have been placed on the floor next to the bed. This minimizes the risk of injury if the patient falls out of bed. Additionally, Lee should have had a consistent toileting schedule and assistance moving around. This procedure discourages the patient from moving on his own and ensures the patient does not sit for long periods of time. Finally, Lofton asserted McComb should have checked on Lee frequently to make sure his basic needs were met. Lofton found no evidence these procedures were in place on the night of the fall and subsequent injury.
¶ 4. Next, Lofton testified about the actual fall. The documents reflect the fall occurred on January 30, 2005, only five days after admission. The attending nurse’s notes from that night indicate Lee was found lying on the floor on his left side. Lofton explained the notes indicate only one “neuro-check” was done after the fall, and no head-to-toe exam was completed. She testified the post-fall assessment of Lee failed to meet the standard of care. She opined that a more thorough exam should have been completed. Lee should have been rolled from side to side; his hips should have been examined; and his ability to move should have been evaluated. According to Lofton, had the nurses done a correct post-fall assessment, Lee’s hip deformity and hip fracture would have been discovered earlier than the next day, which is when the physical therapist discovered the injuries.
¶ 5. Dr. William Meeks, a physician, testified as an expert in the field of medicine. He testified that his review of the records shows Lee suffered a fall, and Lee’s hip was fractured as a result of that fall. He stated: “[Ijt’s pretty clear from the record that he fell from the bed on the night that he sustained a fracture and required surgical repair, and he suffered pain from that.” Dr. Meeks opined that Lee’s hip did not spontaneously fracture and that the injuries were a direct result of the fall. However, Dr. Meeks stated he did not believe McComb had breached the applicable standard of care. Nonetheless, he later acknowledged: “[F]or issues that are strictly nursing related that I don’t have personal experience with, I defer those kinds of opinions to the nurse.”
¶ 6. After hearing the testimony, the jury returned a verdict in favor of Masu-mi. She was awarded $20,000 in economic damages and $5,000 for pain and suffering. McComb moved for a directed verdict, arguing Masumi failed to provide expert testimony to establish a breach in the standard of care proximately caused Lee’s injuries. The trial court denied McComb’s motion for a directed verdict and entered a judgment in favor of Masu-mi. From this ruling, McComb appeals.
STANDARD OF REVIEW
¶ 7. The standard of review for a trial court’s grant or denial of a motion for a directed verdict is de novo. Solanki v. Ervin, 21 So.3d 552, 556 (¶8) (Miss.2009) *779 (citations omitted). This Court will “consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference[s] that may be reasonably drawn from the evidence.” Berry v. Patten, 51 So.3d 934, 938 (¶ 14) (Miss.2010) (quoting Twin County Elec. Power Ass’n v. McKenzie, 823 So.2d 464, 468 (¶ 13) (Miss.2002)). When considering the denial of a motion for a directed verdict, “if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair[-]minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.” Id.
DISCUSSION
¶ 8. McComb argues Masumi failed to present evidence of proximate causation at trial, a requirement to establish a prima facie case of medical negligence. The Mississippi Supreme Court has stated:
In order to establish a prima facie case of medical negligence, a plaintiff must prove that (1) the defendant had a duty to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) the defendant failed to conform to that required standard; (3) the defendant’s breach of duty was a proximate cause of the plaintiffs injury, and (4) the plaintiff was injured as a result.
Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645, 650 (¶ 15) (Miss.2009) (quoting McDonald v. Mem’l Hosp. at Gulfport, 8 So.3d 175, 180 (¶ 2) (Miss.2009)). McComb alleges that the expert physician, Dr. Meeks, did not testify the breach of duty was the proximate cause of the injuries and that the nurse expert, Lofton, was not qualified to establish medical causation; therefore, Masumi failed to prove an essential element of medical negligence, and the trial court erred by denying McComb’s motion for a directed verdict.
¶ 9. In Vaughn, the Mississippi Supreme Court explicitly held that “nurses cannot testify as to medical causation.” Vaughn, 20 So.3d at 652 (¶ 20). In that case, the nurse testified about the standard of care, the breach of standard of care, and the causal link between the negligent act by the nursing staff and the injuries sustained by the patient. Id. at 651 (¶ 16). The nurse testified that the deviation from the standard of care proximately caused the plaintiffs infection. Id. at 650 (¶ 14). Several doctors testified regarding their assessment and treatment of the patient, but none testified about the proximate cause of his injuries. Id. The supreme court found the nurse was not qualified to testify about medical causation “because nurses are not qualified to make medical diagnoses or attest to the causes of illnesses.” Id. at 652 (¶20). Therefore, the plaintiff failed to establish the requisite element of proximate cause, and the defendant was entitled to summary judgment. Id. at 653 (¶ 23).
¶ 10. In this case, to establish proximate causation, Lee needed to show (1) a breach in the appropriate standard of care, (2) that breach proximately caused Lee’s fall, and (3) the fall caused his injuries. Lofton testified about the appropriate standard of care and McComb’s breach of that standard of care. This testimony is clearly allowed under Vaughn. However, Lofton’s testimony also established that the breach in the standard of care proximately caused Lee’s fall. From her testimony the causal link between the breach of standard of care and the fall can be reasonably inferred. The trial court stated:
There was considerable evidence about the standard[;] there was considerable testimony about allegation^] that the standard was breached[;] and there was considerable — there was testimony of why are these standards, why are these *780 things there. Well, they’re there to keep people from falling[;] they’re there to ensure patient safety. I think implicit in that was that — I got from the testimony is that there are inferences — that the testimony and the inferences flowing from that testimony are sufficient to have met the burden at this point[.]
Using Lofton’s testimony to show the breach in the standard of care caused Lee’s fall is different from using her testimony to show the fall caused Lee’s injury. Unlike the nurse in Vaughn, Lofton never testified that the fall proximately caused Lee’s hip fracture. At no point did she make a medical diagnosis or attest to the cause of his fracture. Instead, she only established McComb had breached the appropriate standard of care and that breach proximately caused Lee to fall.
¶ 11. While Lofton’s testimony failed to prove medical causation, Dr. Meeks’s testimony did establish the fall proximately caused Lee’s injuries. He stated that Lee suffered a fractured hip as a result of the fall. Dr. Meeks did not testify that the breach in the standard of care caused the fall, but that is not what is required of his testimony as Dr. Meeks is not an expert in nursing matters. He needed only to testify that the fall caused the fractured hip.
¶ 12. Lofton’s testimony in conjunction with Dr. Meeks’s testimony is sufficient to establish the necessary element of proximate cause for medical negligence. We find the trial court did not err by denying McComb’s motion for a directed verdict. Accordingly, this issue is without merit.
¶ 13. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
FAIR, J., NOT PARTICIPATING.