# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00372-COA

RODNEY WILLIAMS, INDIVIDUALLY AND AS          APPELLANT
ADMINISTRATOR FOR THE ESTATE OF
MANNIE EARL WILLIAMS, AND ON BEHALF
OF THE WRONGFUL DEATH BENEFICIARIES
OF MANNIE EARL WILLIAMS

v.

MANHATTAN NURSING & REHABILITATION          APPELLEE
CENTER, LLC

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2013 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | W. ERIC STRACENER JR. |
| | WALTER ANDREW NEELY |
| ATTORNEYS FOR APPELLEE: | W. DAVIS FRYE |
| | BARRY W. FORD |
| | ANDREA LA'VERNE FORD EDNEY |
| | BRADLEY CLAYTON MOODY |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | GRANTED DIRECTED VERDICT IN FAVOR OF APPELLEE FOR APPELLANT'S FAILURE TO PROVIDE EXPERT TESTIMONY ESTABLISHING PROXIMATE CAUSE |
| DISPOSITION: | AFFIRMED - 09/30/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES, ISHEE AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     This appeal stems from a medical-negligence action filed by Rodney Williams against

Manhattan Nursing & Rehabilitation Center LLC (Manhattan) in the Hinds County Circuit

Court. At the conclusion of Williams's case-in-chief, Manhattan moved for a directed verdict. The circuit court granted the motion. Aggrieved, Williams appeals. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. Williams filed a complaint on November 3, 2008, alleging that Manhattan breached a nursing standard of care when his grandmother, Mannie Earl Williams (Mannie), developed an ulcer that Williams claims caused her death. This case went to trial twice. The first trial ended in June 2011 with a jury verdict in favor of Williams. Manhattan then filed a motion for a new trial, which was granted. Williams did not appeal this decision, and the second trial was set for January 22, 2013.

¶3. Mannie was admitted to Manhattan's facilities on September 6, 2006, for rehabilitation after she fell at home and fractured her pelvis. Mannie was eighty-six years old and had significant medical problems, including: end-stage renal disease, hypertension, congestive heart failure, atrial fibrillation, and enlargement of the heart. A few years prior to being admitted to Manhattan, she had been hospitalized for respiratory infections, pneumonia, and bronchitis. During her residency with Manhattan, she was hospitalized on multiple occasions for pulmonary issues.

¶4. On February 13, 2007, Mannie developed a reddened area on her coccyx. The area became infected with fungal dermatitis, and eventually advanced into a stage-four ulcer. This ulcer serves as the focus of Williams's claim that Manhattan was negligent in caring for Mannie and that Mannie's death was a result of Manhattan's negligence. On February 19, 2007, Mannie was admitted to St. Dominic's Hospital. Five days later, Mannie died. The

death certificate listed the cause of death as cardiopulmonary failure, pneumonia, and other significant conditions, including end-stage renal disease and pleural effusions. The final diagnoses listed on Mannie's discharge summary included: end-stage renal disease, congestive heart failure, bilateral pleural effusions, bilateral infiltrates, chronic deep venous thrombosis, and sepsis.

¶5.    Williams presented Nurse Luanna Trahant to establish that Manhattan breached a nursing standard of care. According to Trahant, Manhattan breached the standard of care by failing to provide Mannie with a planned program to reduce the risk of her becoming completely incontinent. Trahant testified that Mannie should have been placed on a toileting schedule upon admission to Manhattan, where she would be assisted in using the bathroom herself instead of becoming dependent on briefs and diapers. Trahant established that Mannie was completely incontinent and unable to participate in a toileting program by December 22, 2006. Trahant stated under oath that she did not have any issue with Manhattan's ability to care for an incontinent patient. Further, she testified that Manhattan followed the nursing standard of care with regard to cleaning Mannie, checking her, and repositioning her.

¶6.    Williams then presented the testimony of Dr. Keith Miller to establish medical causation. At the first trial, Dr. Miller testified in person but was unavailable for the second trial. As such, Dr. Miller's videotaped deposition from September 28, 2012, was presented to the jury. After reviewing Mannie's medical records, progress notes, and the discharge summary, it was Dr. Miller's opinion that Mannie's immediate cause of death was sepsis or severe infection caused by the infection in her pressure sore and her lungs, made worse by

3

her malnourished state. Dr. Miller was critical of Manhattan in three separate areas: pressure ulcers, malnutrition, and infections. Although Dr. Miller provided testimony regarding his concern for Manhattan's contribution to Mannie's malnourished state, the jury was instructed that this issue was not in dispute.

¶7. Dr. Miller opined that Mannie's ulcer was the product of Manhattan's failure to adequately turn and position Mannie, as well as relieve pressure from her ulcer. He also alleged that Manhattan failed to keep Mannie clean so as to prevent the wound from becoming infected. Dr. Miller declined to allow the lack of a toileting plan to factor into his opinions. He stated that "[a] toileting [plan] may well have been some of the reasons for infections, but that's not my opinion. I have no opinion about that . . . . A toileting plan had nothing to do with my opinions because I don't know how to write toileting plans."

¶8. After hearing Williams's expert testimony, Manhattan moved for a directed verdict. Manhattan argued that the testimony failed to establish a prima facie case for medical negligence. Subsequently, the circuit court entered a judgment directing a verdict in favor of Manhattan. Aggrieved, Williams appealed.

## STANDARD OF REVIEW

¶9. A motion for a directed verdict challenges the sufficiency of the evidence. *McGee v. River Region Med. Ctr.*, 59 So. 3d 575, 577 (¶8) (Miss. 2011) (citation omitted). In reviewing a motion for a directed verdict, this Court will consider "whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." *Id.* (citation omitted). The evidence will be viewed in the "light most favorable to the non-moving party[,] and . . . that party [will be

4

given] the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial." *Griffin v. N. Miss. Med. Ctr.*, 66 So. 3d 670, 672 (¶5) (Miss. Ct. App. 2011) (citing *Munford Inc. v. Fleming*, 597 So. 2d 1282, 1284 (Miss. 1992)). If a question of fact arises "from which reasonable minds could differ," the motion for a directed verdict should not be granted. *Id.*

¶10. Williams argues that the circuit court erred in granting Manhattan's motion for a directed verdict because the expert testimony established a prima facie case for medical negligence. The Mississippi Supreme has found:

> In order to establish a prima facie case of medical malpractice, a plaintiff must prove (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.

*Cleveland v. Hamil*, 119 So. 3d 1020, 1023 (¶10) (Miss. 2013) (citations omitted). In a case for medical negligence, expert testimony must be provided to establish the second and third prongs. *Id.* at (¶11). "Nurses cannot testify as to medical causation." *Vaughn v. Miss. Baptist Med. Ctr.*, 20 So. 3d 645, 652 (¶20) (Miss. 2009).

¶11. Williams cites *McComb Nursing & Rehabilitation Center LLC v. Lee*, 99 So. 3d 776 (Miss. Ct. App. 2012), in support of his argument. In *Lee*, Masumi Lee brought suit on behalf of Robert Lee, a patient with the defendant, McComb Nursing and Rehabilitation LLC (McComb). *Id.* at 777 (¶2). During his residency with McComb, Lee fell from his bed and broke his hip. *Id.* Masumi alleged that McComb was negligent in caring for Lee and that his hip injury was a result of this negligence. *Id.* At the conclusion of the testimony, the jury

5

returned a verdict in favor of Masumi. *Id*. at 778 (¶6). McComb moved for a directed verdict on the basis that Masumi failed to establish that any alleged breach in the standard of care proximately caused Lee's injuries. *Id.* The motion was denied, and McComb appealed. *Id*.

¶12. At trial, Masumi's nursing expert, Susan Lofton, testified that McComb failed to give Lee a fall-risk assessment, failed to determine that he was at a high risk for falls, failed to minimize the risk of falling, failed to establish a procedure to prevent Lee from moving on his own or sitting for long periods, and failed to check on Lee. *Id*. at (¶3). Lofton also stated that McComb failed to meet the standard of care in the post-fall assessment. *Id*. at (¶4). Masumi's medical expert was Dr. William Meeks, who testified that Lee suffered a fall and sustained a fractured hip. *Id*. at (¶5). Dr. Meeks stated that he did not believe McComb breached the applicable standard of care, but later admitted that the nursing-related issues were outside of his scope of expertise. *Id.*

¶13. In reviewing the denial of McComb's motion for a directed verdict, this Court quoted the trial court, which stated "that the testimony and inferences flowing from that testimony are sufficient to have met the burden of proof." *Id*. Further, this Court concluded that "Lofton's testimony in conjunction with Dr. Meeks's testimony is sufficient to establish the necessary elements of proximate cause for medical negligence." *Id*. at 780 (¶12).

¶14. In the instant case, the circuit court provided the following reasoning for granting Manhattan's motion for a directed verdict in its final judgment:

> This court cannot allow any logical leap to be made connecting Dr. Miller's causation testimony to Trahant's standard of care/breach testimony. The two must connect for the plaintiff to survive [a] directed verdict and they do not.

6

The only breach complained of by Trahant is Manhattan's failure to place [Mannie] on a toileting program in the first approximate two months of her stay[;] not only does Dr. Miller's testimony not link this breach to causation of injury (sacral ulcer and death)[,] he specifically states he did not consider the breach in forming his causation opinion.

Although Trahant acknowledged a breach in the standard of care for Manhattan to develop a toileting schedule, Trahant stated that Mannie was completely incontinent by December 22, 2006, and incapable of participating in a toileting plan after that date. Specifically, Trahant testified that, at the time Mannie developed the excoriation of her coccyx, Mannie was no longer able to participate in a toileting plan. Further, Dr. Miller concluded that Mannie's death was caused by sepsis due to a combination of her medical problems, including not only her ulcer, but the infection in her lungs, as well as her malnourished state.

¶15.    After a review of the record, we cannot find that the testimony provided a nexus between the breach of a standard of care by Manhattan and the proximate cause of Mannie's death. Specifically, the expert testimony failed to establish that Mannie's ulcer was the proximate cause of her death due to Manhattan's failure to provide an effective toileting plan. As such, this issue is without merit, and the judgment of the circuit court is affirmed.

¶16.    **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. GRIFFIS, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**