# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01093-SCT

*BOBBI J. YOUNG AND LYNDA L. CARTER,*
*NEXT OF KIN TO CLARENCE S. YOUNG,*
*DECEASED*

*v.*

*ROBERT R. MEACHAM, DR. GINA V. BRAY,*
*ROBERT H. SMITH, STEVAN I. HILLEMSTEIN,*
*BAPTIST MEMORIAL HOSPITAL-DESOTO AND*
*CARDIOVASCULAR PHYSICIANS OF MEMPHIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/27/2007 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM ROBERT BRUCE |
| ATTORNEYS FOR APPELLEE: | JAMES LAWRENCE WILSON, IV |
| | TOMMIE G. WILLIAMS |
| | ALBERT C. HARVEY |
| | MICHAEL KEVIN GRAVES |
| | JANELLE MARIE LOWREY |
| | DAVID W. UPCHURCH |
| | ROBERT K. UPCHURCH |
| | DION JEFFERY SHANLEY |
| | S. DUKE GOZA |
| | WALTER ALAN DAVIS |
| | JOHN H. DUNBAR |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 11/20/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This medical malpractice case involves a grant of summary judgment in favor of multiple defendants. Finding that the trial court erred, we reverse the judgment and remand the case for further proceedings.

**Facts**

¶2. The plaintiffs filed a wrongful death, medical malpractice claim against Dr. Robert Meacham, Dr. Gina Bray, Dr. Robert Smith, Dr. Smith's employer, Baptist Memorial Hospital-Desoto, Inc. (BMH-D), Dr. Stevan Himmelstein, and Dr. Himmelstein's employer, Cardiovascular Physicians of Memphis (CPM).

¶3. The decedent, Clarence Young, went to the office of Dr. Meacham on August 19, 1999, complaining of various symptoms such as fatigue, shortness of breath, and a "heaviness" in his chest. Young was sent home after his visit but returned to Dr. Meacham four days later when his symptoms had not improved. Young again returned home, but on August 25, 1999, his wife took him to the Emergency Room at BMH-D.

¶4. Dr. Smith was the physician on duty at BMH-D, and he determined that Young had suffered a myocardial infarction. Dr. Smith contacted Dr. Bray, who admitted Young to the intensive care unit. Dr. Bray ordered an electrocardiogram (EKG), and Dr. Himmelstein, a cardiologist with CPM, was contacted for a consultation. Young died on the evening of August 26, 1999.

¶5. The plaintiffs filed their complaint on August 22, 2001. On December 21, 2001, the plaintiffs filed a motion for summary judgment against the individual doctors and attached an affidavit from Dr. Hansen. Dr. Hansen stated that the doctors had been negligent in their

2

care of Young, and had they provided timely and proper care, it was probable that Young would have survived.

¶6. Discovery continued, but the proceedings were stayed due to the insolvency of Dr. Meacham's insurance carrier. Once the case became active again, the trial court entered a scheduling order requiring that the plaintiffs' experts be designated by July 15, 2005, and that all discovery be completed by October 15, 2005. The parties later agreed to extend the discovery deadline to March 17, 2006.

¶7. The defendants deposed Dr. Hansen on February 27, 2006. During the deposition, the defendants presented Dr. Hansen with an EKG report showing Young's heart had an ejection fraction of ten to twenty percent. Dr. Hansen stated that he had never seen the report. He questioned the report's validity because it stated that the EKG was performed on August 30, 1999, four days after Young's death, and that with such a low ejection fraction, it was highly improbable that Young would have been able to engage in regular physical activity. Dr. Hansen was asked to assume that the EKG was performed on August 26 and that it was properly interpreted. Dr. Hansen stated that, based on the hypothetical questions, with an ejection fraction of ten to twenty percent, the damage to Young's heart was such that there would not have been any causal link between the defendants' acts or omissions and Young's death.

¶8. Between March 16, 2006, and April 27, 2006, all of the defendants filed motions for summary judgment, arguing, among other things, that the plaintiffs' expert had withdrawn his criticisms and that the plaintiffs' deadline for designating experts had expired on July 15,

2005. The plaintiffs then filed motions to continue summary judgment motions until they could review the EKG results and consult with their expert.

¶9. On June 19, 2006, the plaintiffs responded to the motions for summary judgment, arguing that the defendants could not meet their burden of proof, because the opinions given in Dr. Hansen's deposition were based on hypothetical questions and not facts. They also alleged that the defendants had not provided the EKG of August 26, 1999, and that Dr. Hansen was now of the opinion that the EKG had been misinterpreted, and, therefore, his original opinions were still valid. Three days later, the plaintiffs filed a supplemental expert designation of Dr. Hansen. On July 24, 2006, the plaintiffs filed a second affidavit from Dr. Hansen. The only difference between this and the original affidavit was his opinion that the EKG had been interpreted wrongly.

¶10. The defendants replied that summary judgment was proper because no affidavit accompanied the plaintiffs' response, and the plaintiffs were provided the EKG report well before Dr. Hansen's deposition. The defendants also filed motions to strike the supplemental expert designation of Dr. Hansen.

¶11. The trial court ultimately granted the motions to strike and the motions for summary judgment. In striking the supplemental designation of Dr. Hansen, the court reasoned that all parties had access to Young's medical records by at least February 2005, and that the court was bound by the discovery deadline agreed to by all the parties. Summary judgment was then granted in favor of the defendants on the ground that the plaintiffs no longer had expert testimony that would establish causation between the defendants' alleged negligence and the resulting injuries.

4

**Issues**

¶12. This appeal presents two issues: (1) whether the trial court erred in granting summary judgment in favor of the defendants based on a violation of the discovery deadline; and (2) whether the plaintiffs' failure to respond to Dr. Smith's requests for admissions warranted summary judgment in favor of Dr. Smith and his employer, BMH-D.

**Discussion**

¶13. This Court employs a de novo standard of review of a lower court's grant or denial of a summary judgment. *Heigle v. Heigle*, 771 So. 2d 341, 345 (Miss. 2000). The evidence must be viewed in the light most favorable to the party against whom the motion has been made, and the moving party bears the burden of demonstrating that no genuine issue of fact exists. *Id.* "[T]his Court looks at all evidentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 228 (Miss. 2005) (citing *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996), *overruled on other grounds by Alley v. Northern Ins. Co.*, 926 So. 2d 906 (Miss. 2006)). If there is no genuine issue of material fact, then the moving party is entitled to judgment as a matter of law. *Heigle*, 771 So. 2d at 345. On the other hand, "[i]f there is doubt as to whether or not a fact issue exists, it should be resolved in favor of the non-moving party." *Aetna*, 669 So. 2d at 70 (citing *Ratliff v. Ratliff*, 500 So. 2d 981, 981 (Miss. 1986)).

**I. Summary Judgment Based on Violation of the Discovery Deadline.**

¶14. The basis for the trial court's grant of summary judgment was that the plaintiffs' supplemental designation of Dr. Hansen, as well as his supplemental affidavit, were provided

outside the discovery deadlines.[1]  In the order granting summary judgment in favor of BMH-D, the trial judge correctly stated that the plaintiffs are required to support their claims with medical expert testimony.  The order went on to say that "[w]hile the Plaintiffs attempted to present to the Court supplemental opinions of Dr. Hansen by affidavit, this Court struck that attempted supplementation," and therefore, "Plainitffs have failed to show that the Defendants did anything or failed to do anything that caused injury or damages to Mr. Young."  The orders granting summary judgment in favor of Dr. Smith, Dr. Bray, and Dr. Meacham mirrored this language.

¶15.   However, the scheduling order provided that "all discovery shall be completed on or before October 15, 2005," but made no mention of supplemental discovery.  By holding that the plaintiffs' supplemental expert designation violated the scheduling order, the trial court erroneously equated a discovery deadline with a deadline for supplementation of an expert opinion.

¶16.   To the contrary, Mississippi Rule of Civil Procedure 26(f)(1) *requires* that a party "seasonably supplement a prior response with any question addressed to . . . (B) the identity

---

[1]The order granting summary judgment in favor of Dr. Himmelstein and CPM was based largely on the trial court's finding that "Dr. Hansen's supplemental opinions are not directed at these defendants' care of Mr. Young."  This statement is incorrect as Dr. Hansen's supplemental affidavit clearly reads, "[i]t is my opinion that the recognized standard of acceptable professional practice required that *Dr. Himmelstein* correctly and accurately interpret Mr. Young's echocardiogram and perform or order the appropriate treatment therapy that would have saved his life. *Dr. Himmelstein's* failure to do so is below the standard and resulted in Mr. Young's death." (emphasis supplied).

The order also stated that the reasoning applied to the claims against the other defendants formed an alternative basis for dismissal.  Thus, our discussion of this issue applies to the judgment in favor of Dr. Himmelstein and his employer.

6

of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the testimony." While there is no hardline rule as to what constitutes seasonableness, the focus is to avoid unfair surprise and allow the other side enough time to prepare for trial. *Thompson v. Patino*, 784 So. 2d 220, 223 (Miss. 2001) (quoting *Eastover Bank for Sav. v. Hall*, 587 So. 2d 266, 272 (Miss. 1991); citing *Foster v. Noel*, 715 So. 2d 174, 182-83 (Miss. 1998); *West v. Sanders Clinic for Women, P.A.*, 661 So. 2d 714, 721 (Miss. 1995); *Motorola Commc'ns & Elecs., Inc. v. Wilkerson*, 555 So. 2d 713, 717-18 (Miss. 1989); *Jones v. Hatchett*, 504 So. 2d 198 (Miss. 1987)). In the present case, no trial date had been set, and Dr. Hansen's supplemental affidavit did nothing to change his original opinions. As noted above, the only difference between the supplemental affidavit and the original affidavit was his opinion that the EKG was wrongly interpreted.

¶17. In addition, there is nothing in our rules, absent unusual circumstances and a showing of prejudice, that would prevent a plaintiff from responding to a motion for summary judgment with a supplemental affidavit. *See* M.R.C.P. 26(f). The plaintiffs filed the supplemental opinion in affidavit form within the deadline established under Mississippi Rule of Civil Procedure 56(c),(e). The trial court erred by refusing to consider Dr. Hansen's supplemental affidavit in determining whether there was a genuine issue of material fact sufficient to defeat a motion for summary judgment.

¶18. Finally, the trial court was incorrect in holding that Dr. Hansen had completely withdrawn his original expert opinion. This finding was based on answers given in Dr. Hansen's deposition that were in response to hypothetical questions. Dr. Hansen was asked

7

*to assume* that the EKG report was valid and that it was properly interpreted. His responses to questions not based on established fact did not alter his expert opinions. In addition, none of the defendants presented the trial court with evidence that the EKG was valid and properly interpreted, a fact that was necessary to entitle the defendants to a favorable ruling.

¶19.  Accordingly, there remained a genuine issue of material fact as to whether there was a causal link between the defendants' acts or omissions and Young's death, and the trial judge erred in finding that Dr. Hansen had withdrawn his previous opinions. *Aetna*, 669 So. 2d at 70. Thus, we find that the court should have denied the motions for summary judgment.

**II. Failure to Respond to Requests for Admission.**

¶20.  Dr. Smith and BMH-D argue that the plaintiffs' failure to respond to Dr. Smith's requests for admission entitles them to summary judgment.[2] On October 11, 2001, Dr. Smith served the plaintiffs with requests for admission. Two of the requests asked the plaintiffs to admit that they had no qualified expert who could testify that Dr. Smith deviated from the applicable standard of care and no expert who could also testify that any alleged deviation contributed to Young's death. On December 20, 2001, Dr. Smith filed a motion for summary judgment, arguing that under Mississippi Rule of Civil Procedure 36(b), the plaintiffs' failure to respond to the requests amounted to an admission. The next day, seventy-one days after receiving the requests, the plaintiffs filed their response.

_____

[2]The basis of the action against BMH-D was respondeat superior. Therefore, as the only employee of BMH-D in this case, summary judgment in favor of Smith would necessitate summary judgment in favor of BMH-D.

¶21.    Other than Dr. Smith's first motion for summary judgment, the issue was never raised again, and the trial court never ruled on the motion.  The plaintiffs did not file a response to the motion for summary judgment, and they did not request a withdrawal of the admission. Dr. Smith never asked the court to rule on his motion.  On April 28, 2006, nearly four-and-a-half years after his first motion, Dr. Smith joined BMH-D's motion for summary judgment, but the motion did not raise the requests for admission argument. Further, although the defendants have presented this argument to this Court, the plaintiffs have not addressed this issue as they have chosen not to file a reply brief.

¶22.    Because the trial court has never ruled on this issue, we decline to address this assignment of error.  *See **In re Estate of Patterson v. Patterson***, 798 So. 2d 347, 351 (Miss. 2001).

## Conclusion

¶23.    For these reasons, the trial court erred in granting summary judgment in favor of the defendants.  The judgment is reversed and the case is remanded for further proceedings.

¶24.    **REVERSED AND REMANDED.**

**WALLER, P.J., EASLEY, CARLSON, GRAVES AND DICKINSON, JJ., CONCUR.  RANDOLPH, J., CONCURS IN PART AND IN RESULT. SMITH, C.J., AND LAMAR, J., NOT PARTICIPATING.**