KITCHENS, Justice,
for the Court:
¶ 1. This interlocutory appeal challenges the dismissal of the plaintiffs’ medical malpractice claim related to a slip and fall in a hospital bathroom. The appeal also raises issues regarding the litigants’ duties to amend prior discovery responses. Finding that the claim at issue does not involve professional negligence, and that the trial court properly recognized the parties’ discovery obligations, we affirm the trial court’s ruling and remand the case for further proceedings.

Facts and Procedural History

¶ 2. On October 9, 2006, Deborah Knapp was admitted to St. Dominic Hospital’s emergency room after she had attempted suicide by deliberately overdosing on prescription medication. From the emergency room, Deborah was admitted to the intensive care unit (ICU) and placed on a 72-hour psychiatric hold. While in the ICU, Deborah slipped and fell in her bathroom, due allegedly to a leaky toilet. Deborah claimed that the fall rendered her unconscious and caused severe, permanent injuries to her head and face.
¶ 3. Deborah then was moved to St. Dominic’s Behavioral Health Unit (BHU) notwithstanding her husband’s requests to have her transferred to another hospital. Deborah alleged that, while waiting to use a telephone in the BHU, she was beaten over the head and kicked in the abdomen by another patient. During this attack, Deborah claimed that she suffered further injuries, including a fractured mandible. Deborah was discharged from St. Dominic the following day.
¶ 4. Based on these two distinct events, the Knapps filed this action against St. Dominic. The complaint listed three separate counts entitled “negligence,” “breach of warranty,” and “gross negligence, punitive damages, etc.”[1] Under “negligence,” the Knapps described ten breaches of the standard of care related to a premises liability claim and seventeen breaches of the standard of care related to a professional negligence claim. The complaint used very general language, and, for the most part, did not distinguish between the slip and fall in the ICU and the assault in the BHU. While a handful of the alleged wrongful omissions mentioned the leaky *563 toilet in the ICU, all were related to a premises liability claim, and none of the alleged breaches of professional care was specific to the ICU. As such, the complaint did not clearly or sufficiently assert a medical malpractice claim for Deborah’s slip and fall in the ICU.
¶ 5. On October 1, 2009, the deadline for designating expert witnesses, the Knapps designated John A. Tilelli, M.D., to testify to the standard of care required of St. Dominic during Deborah’s hospitalization. In his affidavit, Dr. Tilelli described the medical negligence in the ICU as follows:
St. Dominic-Jackson Memorial Hospital and/or its physicians, nursing staff and/or medical personnel breached the standard of care in their treatment of Deborah Knapp given that she was unrestrained, and unsupervised in the intensive care unit when she was admitted due to an overdose (suicide attempt), mental disorder and was placed on a seventy-two (72) hour hold.
St. Dominic-Jackson Memorial Hospital and/or its physicians, nursing staff and/or medical personnel breached the standard of care by failing to properly monitor Deborah Knapp and/or exercise reasonable care to keep and maintain its premises in a reasonably secure or safe condition for Plaintiff and other patients at its facility during her stay in the St. Dominic Intensive Care Unit. St. Dominic-Jackson Memorial Hospital and/or its physicians, nursing staff and/or medical personnel failed to have and/or utilize the proper monitoring equipment while Deborah Knapp was in the St. Dominic-Jackson Memorial Intensive Care Unit.
¶ 6. In response to the expert designation, St. Dominic -filed a motion to strike Dr. Tilelli as an expert witness, arguing that he was not qualified to testify about the standard of care in either the ICU or BHU. Because Dr. Tilelli was the Knapps’ only medical expert, St. Dominic requested partial summary judgment on the claims “related to [Deborah’s] transfer to the Behavioral Health Unit and the subsequent care and treatment received in the Behavioral Health Unit.”
¶ 7. On March 23, 2010, the trial court granted St. Dominic’s motion, finding that Dr. Tilelli was not “satisfactorily familiar with the specialty of psychiatry to testify regarding the applicable standard of care.” The trial court noted that “his career has been dedicated to the treatment and care for pediatric patients” and that he “has never practiced in the field of psychiatry.” The order granted summary judgment in favor of the defendant, stating:
“As a general rule, expert testimony must be used in proving the elements of medical negligence. Absent expert testimony, there is no triable issue of fact with regard to the alleged medical negligence,” surrounding the treatment of Plaintiff, Deborah Knapp, in the Adult Intensive Care Unit and her subsequent transfer to the Behavioral Health Unit at St. Dominic. As a result, the Defendant’s Motion for Partial Summary Judgment is well-taken and should be granted, as to Defendant St. Dominic, related to Ms. Knapp’s psychiatric care and treatment at St. Dominic.
(Quoting McDonald v. Mem’l Hosp. at Gulfport, 8 So.3d 175, 182 (Miss.2009)) (emphasis added).
¶ 8. Thereafter, during an email exchange between the attorneys, counsel for the Knapps remarked to St. Dominic’s counsel that the order striking Dr. Tilelli as an expert witness only prohibited his testifying about the standard of care in the BHU, and did not prohibit his testifying regarding the standard of care in the ICU. Believing that the order had prohibited Dr. Tilelli from testifying in any manner, St. Dominic filed a motion to clarify the *564 March 23, 2010, order. The trial court granted St. Dominic’s motion, and on September 14, 2010, entered an order declaring that Dr. Tilelli “was stricken by this Court’s March 23, 2010 Opinion/Order, and the only remaining claims relate to the Plaintiffs’ premises liability claivis.” (Emphasis added.)
¶ 9. The September 14, 2010, order also addressed outstanding discovery motions. The Knapps had filed motions to extend the discovery deadline and to extend the deadline for expert designations. The trial court refused to extend the deadline for expert designations but granted the Knapps an additional thirty days to depose certain witnesses in connection with belatedly produced maintenance documents.
¶ 10. This Court granted the Knapps’ petition for interlocutory review of the trial court’s order of September 14, 2010. The Knapps appealed the trial court’s decision regarding certain discovery issues as well as the dismissal of their medical malpractice claim related to Deborah’s fall in the ICU. However, the Knapps have not contested the trial court’s dismissal of their medical malpractice claim related to Deborah’s time in the BHU.

Discussion

¶ 11. The Knapps raise three issues on appeal: (1) whether the trial court erred in ruling that Dr. Tilelli was not qualified to render an expert opinion as to the standard of care in the ICU; (2) whether the trial court erred in refusing the plaintiffs additional time to designate an expert witness; and (3) whether the trial court erred in denying the plaintiffs’ motion to extend the discovery deadline. Because we are unable to find that the Knapps pled a medical negligence claim for Deborah’s fall in the ICU, we decline to disturb the trial court’s decision regarding either Dr. Tilel-li’s qualifications or the deadline for expert designations. As for the trial court’s refusal to extend the discovery deadline, the plaintiffs have misinterpreted the ruling, and we find no error with regard to the third issue on appeal.

I. The trial court did not recognize, and the plaintiffs did not plead, medical negligence related to Deborah’s slip and fall in the ICU.

¶ 12. The Knapps argue that Dr. Tilelli is qualified to testify regarding the standard of care in the ICU because “this is a failure to monitor case ... not one of a failure to properly treat and/or diagnose a patient with a specific medical condition.” However, we do not find that the plaintiffs ever pled a medical negligence cause of action related to Deborah’s slip and fall in the ICU.
¶ 13. The Knapps’ claims are founded on two distinct occurrences: (1) a slip and fall in the ICU and (2) an assault in the BHU. The complaint alleged two types of negligence: (1) premises liability and (2) medical malpractice. Although the complaint clearly alleged a premises liability claim arising out of Deborah’s fall, the generic language used to describe professional negligence could apply either to the fall or the assault or both. Thus, the complaint did not contain a “simple, concise, and direct” claim for medical negligence in the ICU. M.R.C.P. 8(e)(1).
¶ 14. Based on the record before us, it appears that both the trial court and the defendant treated Deborah’s fall in the ICU as a premises liability claim and not one for medical malpractice. St. Dominic never explicitly argued that the Knapps had not pled a medical malpractice claim arising out of the fall; yet, in its motion for partial summary judgment, it requested judgment solely on the claims “related to [Deborah’s] transfer to the Behavioral Health Unit and the subsequent care and *565 treatment received in the Behavioral Health Unit.” The trial court’s initial order granting partial summary judgment referred to claims “related to Ms. Knapp’s psychiatric care and treatment at St. Dominic,” but did not distinguish between the slip and fall and the assault. The subsequent order, which granted St. Dominic’s motion for clarification, simply found that the only remaining claims were “premises liability claims.” Thus, the trial court never recognized that the Knapps had pled malpractice for the injuries Deborah sustained in the ICU.
¶ 15. Although the Knapps describe this as a “failure to monitor case,” the nature of the alleged professional negligence is far from clear. Both the complaint and Dr. Tilelli’s affidavit refer to Deborah as having been “unrestrained,” but do not connect the failure to restrain Deborah with her injuries. Assuming that the restraints would have been to prevent her from attempting suicide, the failure to restrain Deborah would not have proximately caused her to slip and fall on water from a leaky toilet. See Entrican v. Ming, 962 So.2d 28, 36-87 (Miss.2007) (discussing proximate cause, foreseeability, and “su-perceding intervening cause”). The expert affidavit faults St. Dominic for failing to “supervise” or “monitor” Deborah, but nothing in the record suggests that she needed assistance using the restroom. The complaint also briefly mentions that Deborah “went undiscovered in her room for what is believed to be more than an hour,” but the expert affidavit does not mention any such delay. In fact, the nurse who first responded testified that he heard Deborah fall and immediately rendered aid. Finally, the complaint mentions that Deborah was “dragged and forcefully taken to the St. Dominic Behavioral Unit,” but the Knapps do not allege that she sustained injuries during that transfer.
¶ 16. The Knapps take issue with the trial court’s striking Dr. Tilelli because he was not a specialist in the field of psychiatry and because “his career ha[d] been dedicated to the treatment and care for pediatric patients.” Yet, without knowing the nature of the alleged professional negligence at issue, we cannot discern the applicable standard of care, and it is not possible to determine whether Dr. Tilelli’s “knowledge, skill, experience, training, or education” demonstrated a “satisfactory familiarity” with the specialty of the defendant. Hubbard v. Wansley, 954 So.2d 951, 957 (Miss.2007) (citing West, 661 So.2d at 719)). Accordingly, we find no reason to disturb the trial court’s having struck Dr. Tilelli as an expert witness.

II. The passing of the discovery deadline does not relieve parties of their duty to supplement or amend discovery responses.

¶ 17. The Knapps also have appealed the trial court’s denial of their motion to extend the discovery deadline. The Knapps mistakenly believe that the passage of the discovery deadline precludes their obtaining previously requested documents, specifically, a maintenance record and an incident report.[2] According to the Knapps’ reply brief, “the trial court’s order regarding the extension of the discovery deadline does not allow Plaintiffs the opportunity to gain access to clearly discoverable information that Plaintiffs did not know existed until well after the expiration of the discovery deadline.”
*566 ¶ 18. The Knapps misunderstand the trial court’s ruling. Although the September 14, 2010, order permitted the Knapps “to pursue limited discovery,” the trial court did not find that St. Dominic was somehow relieved of its duty to amend discovery responses as required by Mississippi Rule of Civil Procedure 26(f). Rule 26(f)(2) requires a party “seasonably to amend” previous discovery responses if that party “obtains information upon the basis of which (a) the party knows that the response was incorrect when made, or (b) knows that the response, though correct when made, is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.” This rule still is applicable even after a discovery deadline has passed. Young v. Meacham, 999 So.2d 368, 372 (Miss.2008).
¶ 19. At the hearing on the Knapps’ motion to extend the discovery deadline, counsel for the Knapps told the trial court that St. Dominic was withholding certain maintenance records. The following exchange took place:
Trial Court: Well, do you have the records now?
Counsel for Knapps: No.
Counsel for St. Dominic: They did file a motion to compel, one sentence, that says—
Trial Court: You’re hanging — I mean, there’s a hanging on, but I mean, you’re standing by they didn’t file a motion to compel. Is that the reason you haven’t furnished them?
Counsel for St. Dominic: Well, no. That’s not the — I mean, it’s not that altogether. We gave them all documents that were from work requests in the month of October.... They asked for all maintenance records for that bathroom since the hospital existed.
Trial Court: All right. Well, obviously, that’s too long.
After further discussion, during which counsel for the Knapps insisted that St. Dominic was withholding a “work order request” from the day of Deborah’s alleged fall, the trial court said, “[w]ell, the Court’s going to require if they haven’t, been furnished, those documents at or about the time of the leaking and the incident, so there’s no question about that.” We understand this statement as the trial court’s correctly recognizing that St. Dominic had a duty to amend its discovery responses, if additional maintenance records existed. Nothing in the written order suggested that the trial court had changed its position on the matter; thus, contrary to the Knapps’ understanding, the denial of their motion to extend the discovery deadline did not allow St. Dominic to disregard its obligations under Rule 26(f).
¶ 20. In its brief, St. Dominic recognizes that parties “have an ongoing duty to supplement previous discovery responses and to timely provide these documents,” and argues that the Knapps have an “emphatic, yet unsupported, belief that St. Dominic has not produced relevant documents and that St. Dominic will not supplement its discovery responses in accordance with Rule 26 if such documents are discovered.” (Emphasis in brief.) However, this was not St. Dominic’s position before the trial court. At the hearing, counsel for the Knapps argued that Rule 26 required St. Dominic to amend its prior responses, but it was not until St. Dominic filed its appellate brief that it acknowledged its duties under Rule 26. As the transcript demonstrates, St. Dominic’s position before the trial court appeared to be that it had not amended its responses because the Knapps had not filed a motion to compel, not because the documents in *567 question did not exist.[3] Thus, the Knapps’ suspicions that St. Dominic was withholding discoverable information was not so “unsupported,” and St. Dominic’s arguments before the trial court reinforced the Knapps’ mistaken belief that the passage of the discovery deadline would preclude them from obtaining previously requested documents.
¶ 21. To be clear, the passage of a discovery deadline does not abate a party’s Rule 26 responsibilities “seasonably” to amend or supplement prior responses. Young, 999 So.2d at 372. Because the trial court’s denial of the Knapp’s motion to extend the discovery deadline did not alter this duty imposed on St. Dominic, we find no reason to disturb the trial court’s ruling on this issue.
Conclusion
¶ 22. Although the plaintiffs present this as a “failure to monitor” medical negligence case, they did not plead medical negligence related to Deborah’s fall in the ICU. Therefore, we find no error in the trial court’s dismissing all but the premises liability claims. Regarding discovery, we find that the trial court did not relieve St. Dominic of its duty to amend prior discovery responses as required by Rule 26(f) of the Mississippi Rules of Civil Procedure. For these reasons, we affirm the Circuit Court’s order of September 14, 2010, and remand the ease for further proceedings.
¶ 23. AFFIRMED AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, PIERCE AND KING, JJ„ CONCUR. LAMAR AND CHANDLER, JJ„ NOT PARTICIPATING.

. Two other counts related solely to other defendants. Deborah Knapp's spouse, Harold Knapp, filed a derivative claim of loss of consortium. All defendants, save St. Dominic, have been dismissed, and it appears that the Knapps have abandoned their breach of warranty claim.

. Although the trial court's order also covered other discovery issues, the Knapps’ appeal addresses only these two documents.

. Also at issue before the trial court was St. Dominic’s duty to disclose certain “standing orders.” Counsel for St. Dominic took the position that the Knapps, "should have filed a motion to compel, which I would argue is untimely. You should need to file a motion to compel prior to the discovery deadline.” The Knapps have not appealed any decision regarding these standing orders.