# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01367-COA

DONALD BRENT GRAFTON AND WENDY GRAFTON    APPELLANTS

v.

SOUTH CENTRAL REGIONAL MEDICAL CENTER    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/24/2019 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | FRANK CHANDLER BREESE III |
| ATTORNEYS FOR APPELLEE: | RICHARD O. BURSON |
| | PEELER GRAYSON LACEY JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 05/04/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, C.J., FOR THE COURT:**

¶1. Donald and Wendy Grafton (the Graftons) filed a complaint for negligence and medical malpractice in Jones County Circuit Court, asserting that South Central Regional Medical Center (SCRMC) employees had failed to diagnose and treat a heart attack Donald allegedly suffered while in the hospital's emergency room. More than four years after the trial court's discovery deadline had passed, the Graftons moved to reset the dates for expert designation. The trial court denied the motion.

¶2. SCRMC subsequently filed a motion for summary judgment, asserting that the Graftons' "claims fail as a matter of law because they cannot provide any expert testimony

regarding the essential element of causation." The Graftons responded with a supplemental affidavit by a formerly designated expert witness, Dr. Rick Carlton. Granting summary judgment for SCRMC, the trial court found Dr. Carlton's supplemental affidavit "containing undesignated opinions" was "inadmissible" and, thus, could not be considered "for the purposes of summary judgment." The court also noted that Dr. Carlton's prior designation "indicate[d] that he [would] not offer testimony sufficient to demonstrate a question of fact as to the causation of [Donald's] injury." The Graftons appeal, and finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. On March 10, 2007, Donald went to the emergency room of SCRMC complaining of severe chest pains. He was seen by Karen Sue Temple, a nurse practitioner, who ordered a full cardiac workup, including an electrocardiogram (EKG) and cardiac enzyme testing. These tests did not indicate that Donald was experiencing a heart attack. Temple gave Donald a gastrointestinal "cocktail" and diagnosed him with gastritis and esophagitis. Donald eventually reported that the burning in his chest was better, and he could get relief by belching. Although Donald was offered admission for further testing and observation, he declined; so the nurse instructed him to follow up with his physician. The EKG and cardiac enzyme testing were not repeated at SCRMC.

¶4. Two days later, Donald followed up with his family physician, who performed an EKG and referred him to a cardiologist. The cardiologist, Dr. Wassim Mouannes, diagnosed

2

Donald with a myocardial infarction and admitted him to the hospital, where tests showed that Donald had suffered a heart attack. Dr. Mouannes performed a cardiac intervention to open a blocked artery and inserted a stent. Five months later, a defibrillator was inserted into Donald's chest.

¶5. On October 2, 2008, the Graftons filed a negligence and medical-malpractice action in the circuit court, alleging that had SCRMC's emergency room staff diagnosed Donald's heart attack, the permanent damage to his heart "could have [been] prevented had he received appropriate care." Denying the allegations, SCRMC argued that the Graftons were not entitled to a judgment and requested dismissal of the case.

¶6. Between 2009 and 2013, the case experienced delays. Eventually, in accordance with an April 1, 2013 "Agreed Scheduling Order," the Graftons designated Dr. Carlton as an "expert in the field of emergency medicine and internal medicine" on July 31, 2013. The designation stated that Dr. Carlton was "expected to testify" to the following:

(1) The hospital staff failed to meet the minimum standard of care by "prematurely" releasing Donald from its care;

(2) "[S]tandard of care requires that – in addition to taking a history, performing a physical exam and acquiring an EKG – blood tests must be obtained to evaluate for abnormalities";

(3) When a patient's "initial EKG and cardiac markers are normal," as they were here, and the hospital should have repeated the tests, as "Troponin may take up to 6 hours from the onset of symptoms to begin to elevate";

(4) "[B]ecause [Donald's] chest pains continued for two more days and because he was diagnosed two days later by his cardiologist with a

3

heart attack, it is almost certain that Mr. Grafton was experiencing a heart attack when he arrived at the emergency room of SCRMC"; and

(5)     "[I]t is likely that an earlier diagnosis could have prevented the severe heart damage that he suffered."

The designation further stated, "Plaintiff may also call any of the physicians who treated Mr. Grafton or performed diagnostic tests or evaluated results of those tests." The deadline for completion of discovery was December 10, 2013. The order specifically provided, "Completion of discovery includes all supplementation of responses to discovery required by Rule 26(f), Miss. R. Civ. P." Mississippi Rule of Civil Procedure 26(f)(2) provides that a "party's duty to supplement in a timely manner extends to information included in any disclosure of that expert's expected testimony, including information given in response to an expert interrogatory, information provided in an expert disclosure, and information given during an expert's deposition."

¶7.     The Graftons deposed Dr. Mouannes, Donald's treating cardiologist, on December 2, 2013. At the start, SCRMC objected to the doctor's testimony "to the extent that he's going to offer expert opinion testimony." Counsel for the Graftons admitted Dr. Mouannes had not been designated as an expert but indicated that they "would like to have him qualified as an expert." Dr. Mouannes's counsel objected on this basis, asking that the questions be limited to his treatment, "not . . . to pass judgment on what other people in this scenario may have done." SCRMC's counsel also renewed its objection to his testimony to the extent that it might "fall into a causation realm where you are trying to make a causation

4

connection between treatment either not provided or untimely provided to damage issues in this case."

¶8. On February 19, 2014, the trial was continued by agreement of the parties due to Donald's being the subject of a federal criminal investigation. Additionally, the original judge retired in January 2015, and there was no activity in this case for approximately a year due to the recusal of a newly elected judge. Finally, a new judge was appointed on January 25, 2018, and a new trial date was set for January 14, 2019.

¶9. On May 23, 2018, the Graftons moved to reset the dates for designation of expert witnesses, citing the fact that their previously designated expert, Dr. Carlton, had moved and was likely to retire. SCRMC did not object to the request "to substitute a replacement" for Dr. Carlton, "so long as the new expert (1) [was] promptly designated and (2) d[id] not introduce any new opinions that were not previously designated for Dr. Carlton." However, "[t]o the extent Plaintiff's [m]otion seeks a complete 'do-over' of all expert designations," the hospital "strongly object[ed]," arguing that it would "be prejudiced if [the Graftons] are allowed to withdraw their current expert designations and effectively start over with a clean slate." Specifically, SCRMC asserted:

> Allowing [Donald] to completely overhaul his expert designations at this stage would effectively nullify the considerable time and resources that the Hospital has spent preparing its defense during the first several years after this case was filed while also rewarding Plaintiff by permitting him to take the Hospital's timely disclosure of its expert defense strategy into consideration when designating his primary expert opinions.

Denying the Graftons' motion, the court considered the timeline of the case proceedings and

found the Graftons had not "demonstrated good cause" to grant their motion, reasoning:

> Following the deposition of Dr. Mouannes, [Donald's treating cardiologist,] the Plaintiffs knew or should have known three matters relating to the litigation. First, Dr. Mouannes had not been designated as an expert witness, and the Defendant objected during the deposition to any expert testimony relating to causation as he had not been designated as an expert nor rendered any opinions relating to a causal connection between the alleged malpractice and causation. Second, Dr. Mouannes had no opinion about a breach of the standard of care by the Defendant, and could not say with a reasonable degree of medical certainty when [Donald's] heart attack began. Third, the discovery deadline, according to the Agreed Scheduling Order, was December 10, 2013.
>
> . . . .
>
> From December 2, 2013 until May 23, 2018, a period in excess of four years, the Plaintiffs did not file a motion to extend any of the deadlines set forth in the Agreed Scheduling Order, file a supplemental designation of expert witnesses or take any other action to reset the deadlines or designate additional expert witnesses, including a cardiologist.[1]

SCRMC thereafter filed a motion for summary judgment on the basis that the Graftons' "claims fail as a matter of law because they cannot provide any expert testimony regarding the essential element of causation."

¶10. Responding to the summary-judgment motion, the Graftons submitted a sworn affidavit by Dr. Carlton, dated November 16, 2018. In the affidavit, Dr. Carlton opined that "to a reasonable degree of medical certainty, . . . [Donald] was suffering from an acute

---

[1] The reassignment of judges in this case was an issue due to Judge Landrum's retirement in January 2015. However, we note that Dr. Mouannes's deposition was in December 2013, at which point the Graftons were aware that Dr. Mouannes was not properly designated as an expert witness; so the Graftons still had one year in which they could have filed the motion to reset the date for expert designation prior to Judge Landrum's retirement.

myocardial infarction when he arrived at the emergency room[.]"  Dr. Carlton further asserted that "had SCRMC followed the appropriate standard of care and rerun its tests, [it] would have revealed the myocardial infarction, and [Donald] could have been treated that day instead of two days later after the most serious damage had occurred."  He concluded, "[I]t is my opinion, to a reasonable degree of medical certainty, that [Donald] had sustained his myocardial infarction shortly prior to presentation to [SCRMC] at approximately 07:30 on March l0, 2007."

¶11.    SCRMC filed a motion to strike Dr. Carlton's affidavit, alleging that not only was the affidavit "untimely" but also contained "new and previously undisclosed expert opinions."  Specifically, the motion claimed that Dr. Carlton's affidavit "abandons the recurrent chest pain basis contained" in his prior designation and raises for the "first time . . . the alleged significance of the Myoglobin lab values and the presence of hyperacute T-waves on EKG."  SCRMC also asserted that the affidavit "still do[es] not supply the proof necessary for Plaintiffs to avoid summary judgment in this regard" and that the Graftons were "attempting to introduce new theories of causation less than sixty (60) days prior to trial."[2]

¶12.    The trial court granted summary judgment in favor of SCRMC, concluding that Dr. Carlton's affidavit was "inadmissible," as it "contain[ed] undesignated opinions," and the

_____

[2] Mississippi Uniform Circuit and County Court Rule 4.03(A) provides, "Absent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial."  As of the date the affidavit was filed, there were only 57 days remaining before trial.

Graftons "did not have leave to supplement its expert's designation more than five (5) years after the deadline for designation of experts." Thus, the supplemental affidavit could not be considered "for the purposes of summary judgment."[3] The court further found Dr. Carlton's prior designation insufficient to satisfy the element of causation. The Graftons have appealed the court's ruling.

## DISCUSSION

¶13. The Graftons contend that the trial court erred in "disregarding" Dr. Carlton's affidavit and in granting summary judgment. Mississippi Rule of Civil Procedure 56(c) provides that a trial court should grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our Court reviews a circuit court's grant or denial of a summary judgment de novo. *Johnson v. Burns-Tutor*, 925 So. 2d 155, 157 (¶10) (Miss. Ct. App. 2006).

¶14. In a medical-malpractice action, the plaintiff "has the burden to prove (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such

---

[3] Having granted summary judgment, the court denied SCRMC's motion to strike as moot.

8

duty by the defendant." *Phillips v. Delta Reg'l Med. Ctr.*, 290 So. 3d 386, 393 (¶29) (Miss. Ct. App. 2020) (internal quotation mark omitted). Thus, in order to survive summary judgment, the plaintiff is generally required to establish these elements through expert testimony. *Id*.

¶15.    As discussed, the trial court found Dr. Carlton's affidavit was not admissible for the purposes of summary judgment because (1) the Graftons "did not have leave to supplement its expert's designation more than five (5) years after the deadline for designation of experts," and (2) the affidavit "contain[ed] undesignated opinions." We find no error in the court's ruling. The Graftons did not have leave by the trial court to supplement discovery with the undesignated opinion by Dr. Carlton because the court had denied their motion to reset the dates for designation. In doing so, the trial court thoroughly considered the case's history and timeline. The court concluded that "[a]lmost five years ha[d] elapsed since the deadlines for expert designation and discovery expired," and at no time during that period did the Graftons "file a motion to extend any of the deadlines set forth in the Agreed Scheduling Order, file a supplemental designation of expert witnesses or take any other action to reset the deadlines or designate additional expert witnesses, including a cardiologist." It was only after the court had denied their motion that the Graftons submitted the supplemental affidavit, less than two months before trial. This filing violated the 2013 scheduling order, the court's order denying the motion to reset the designation date, Rule 26(f)(2), and Uniform Circuit and County Court Rule 4.03(A).

9

¶16.    The dissent contends that a plaintiff is not prevented "from responding to a motion for summary judgment with a supplemental affidavit." *See Young v. Meacham*, 999 So. 2d 368, 372 (¶17) (Miss. 2008).  However, in *Young*, the supreme court noted that "no trial date had been set, and Dr. Hansen's supplemental affidavit did nothing to change his original opinions[;] . . . the only difference between the supplemental affidavit and the original affidavit was his opinion that the EKG was wrongly interpreted."  *Id*. at (¶16).  Moreover, although the supreme court acknowledged in *Young* that "there is no hardline rule as to what constitutes seasonableness" for the supplementation of an expert's designation, *id*., here the trial court's agreed scheduling order established a hard and fast deadline, requiring "[c]ompletion of discovery includ[ing] *all supplementation of responses to discovery required by Rule 26(f), Miss. R. Civ. P*." by December 10, 2013.  (Emphasis added).

¶17.    We further find no error in the court's determination that the affidavit of Dr. Carlton contained opinions not previously designated.  As noted in the motion to strike, the affidavit "abandon[ed] the recurrent chest pain basis" from Dr. Carlton's prior designation and raised for the "first time . . . the alleged significance of the Myoglobin lab values and the presence of hyperacute T-waves on EKG."  Dr. Carlton's prior designation contains no mention of these terms.  In *Singley v. Trinity Highway Products LLC*, 180 So. 3d 708, 717-18 (¶¶25-26, 32) (Miss. Ct. App. 2015), this Court affirmed summary judgment for the defendant based, in part, on the trial court's exclusion of supplemental expert opinions filed months after the designation deadline and four months prior to trial.  We held:

> [W]e agree with the trial court's finding that, due to the complexity of the issues in this case, allowing a new theory of liability only four months prior to the scheduled trial would be prejudicial. New expert depositions would have to be conducted, and the [d]efendants allowed time to find an expert witness to counter Head's new theory.

*Id*. at 718 (¶26).

¶18. For these reasons, we find no error in the trial court's ruling that Dr. Carlton's 2018 affidavit was inadmissible and, therefore, could not be considered for the purposes of summary judgment. *See Trustmark Nat'l Bank v. Meador*, 81 So. 3d 1112, 1118 (¶14) (Miss. 2012) (recognizing that "evidence offered in support of or in opposition to [a motion for summary judgment] must be admissible at trial").

¶19. Lastly, Dr. Carlton's initial expert designation in 2013 simply stated that he was "expected to testify . . . .it is likely that an earlier diagnosis could have prevented the severe heart damage that he suffered." As SCRMC argues, this designation is "silent as to what treatment, if any, would have been provided had the heart attack been diagnosed earlier, much less any discussion of the timing and efficacy of any such treatment." We find that the trial court correctly found in its order granting summary judgment, "[s]uch opinions are expressed in terms of a mere possibility rather than probability which is insufficient to establish causation under Mississippi law." *See Univ. of Miss. Med. Ctr. v. Lanier*, 97 So. 3d 1197, 1202 (¶20) (Miss. 2012) ("The expert opinion of a doctor as to causation must be expressed in terms of medical probabilities as opposed to possibilities."); *Williams v. State*, 35 So. 3d 480, 486 (¶19) (Miss. 2010) ("Before a qualified expert's opinion may be received,

11

it must rise above mere speculation."); *The Univ. of Mississippi Med. Ctr. v. Littleton*, 213 So. 3d 525, 537 (¶34) (Miss. Ct. App. 2016) (finding expert's opinion was "mere speculation and insufficient to establish causation" because it failed "to establish, to a reasonable degree of medical probability, the causal link between the hospital's failure to properly care for [deceased] and the cause of the injury").

¶20.    As this Court has recognized, "Mississippi case law demands that in a medical malpractice action, negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care." *Dotson v. Jackson*, 8 So. 3d 230, 236 (¶29) (Miss. Ct. App. 2008) (quoting *Sheffield v. Goodwin*, 740 So. 2d 854, 856 (¶5) (Miss. 1999)). Thus, "[w]hen a plaintiff fails to provide expert testimony establishing a prima facie case of medical malpractice, generally, a grant of summary judgment is required." *Miss. Baptist Med. Ctr. Inc. v. Phelps*, 254 So. 3d 843, 845 (¶7) (Miss. 2018). Accordingly, we affirm the court's decision to grant summary judgment.

¶21.    **AFFIRMED.**

**CARLTON, P.J., LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION, JOINED BY LAWRENCE, SMITH AND EMFINGER, JJ. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.    WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, McDONALD AND McCARTY, JJ.**

**WILSON, P.J., CONCURRING IN RESULT ONLY:**

¶22.    I would affirm the circuit court's order granting summary judgment because even if Dr. Carlton's affidavit should be considered, the plaintiffs failed to create a genuine issue of

12

material fact on the issue of proximate causation.[4] "Mississippi law requires proof of causation to a degree of reasonable medical probability that—absent the alleged malpractice—a significantly better result was probable, or more likely than not (i.e., a greater than 50 percent chance of a substantially better outcome than was in fact obtained)." *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 524 (¶13) (Miss. 2019). In his affidavit, Carlton states:

> [M]y opinion, to a reasonable degree of medical certainty, is that Mr. Grafton was suffering from an acute myocardial infarction when he arrived at the emergency room at SCRMC on March 10. If so, had SCRMC followed the appropriate standard of care and rerun its tests, they would have revealed the myocardial infarction, and he could have been treated that day instead of two days later after the most serious damage had occurred.

Carlton never states that earlier treatment would have prevented or mitigated the "most serious damage" that occurred later. Rather, he simply opines that but for the alleged malpractice, Grafton would have been treated sooner. Carlton's opinion is insufficient under

---

[4] South Central Regional Medical Center (SCRMC) made this argument in the circuit court and again on appeal. Although the circuit court ruled that the opinions in the Carlton affidavit were inadmissible and refused to consider them, SCRMC is entitled to rely on any alternative ground that it raised in the court below. *Brocato v. Miss. Publishers Corp.*, 503 So. 2d 241, 244 (Miss. 1987); *see also Horton ex rel. Estate of Erves v. City of Vicksburg*, 268 So. 3d 504, 507 (¶8) (Miss. 2018) ("[W]e must affirm the grant of summary judgment if any ground raised and argued below will support the lower court's decision." (brackets and quotation marks omitted)); *Jennings v. Shuler*, 147 So. 3d 847, 849 (¶3) (Miss. Ct. App. 2014) ("[I]n our de novo review, we must consider each ground for summary judgment raised by [the defendant-appellee]."); *Keckley v. Estes Equip. Co.*, 276 So. 3d 1230, 1235 (¶14) (Miss. Ct. App. 2018) ("Our review is not limited to the specific grounds on which the circuit court granted summary judgment. Rather, we review the record de novo and may consider any grounds that the moving party raised in the circuit court.").

Mississippi law because it provides no evidence that it is "more likely than not" that earlier treatment would have led to a "significantly better result" or a "substantially better outcome," as required by our longstanding "loss-of-chance standard." *Id.* at (¶¶13-14). Therefore, even if Carlton's affidavit is consistent with the plaintiffs' prior expert designation and should be considered, SCRMC is still entitled to judgment as a matter of law. For that reason, I concur that the judgment of the circuit court must be affirmed.

**LAWRENCE, SMITH AND EMFINGER, JJ., JOIN THIS OPINION.**

**WESTBROOKS, J., DISSENTING:**

¶23. The affidavit containing Dr. Fredrick Carlton, Jr.'s supplemental expert opinion was timely and should have been deemed admissible to satisfy the element of causation. Therefore, I dissent and would reverse and remand the grant of summary judgment.

¶24. This medical negligence case arose from the Graftons' allegation that South Central Regional Medical Center (SCRMC) failed to timely diagnose and treat a heart attack that Donald Grafton allegedly experienced while in the hospital emergency room on the morning of March 10, 2007. Specifically, the Graftons contend that Donald was discharged prematurely. Donald went to SCRMC's emergency room complaining of severe chest pains. He was seen by Karen Sue Temple, a nurse practitioner, who ordered a full cardiac workup, including an EKG and cardiac enzyme testing, none of which indicated that Donald was experiencing a heart attack. The nurse practitioner also gave him a gastrointestinal (GI) cocktail and diagnosed him with gastritis and esophagitis. The nurse instructed him to follow

14

up with his physician after Donald stated that the chest burning was better and he felt like he could get relief by belching. Additionally, Donald was offered admission for further testing and observation, but he declined.

¶25. Two days later, Donald followed up with his family physician, Dr. Jack Evans, who performed an EKG and immediately referred him to Dr. Wassim Mouannes, Donald's treating physician and cardiologist, who diagnosed him with a myocardial infarction and admitted him to the hospital. Tests showed that he had suffered a heart attack. The cardiologist performed a cardiac intervention to open a blocked artery and inserted a stent. Five months later, a defibrillator was inserted into Donald's chest.

¶26. In October 2008, the Graftons filed a complaint alleging that had Donald been properly diagnosed while in the hospital's emergency room, the damage to his heart could have been prevented. This case was met with several delays between 2009 and 2013.[5] Seeking to prove causation, in July 2013, the Graftons designated Dr. Carlton as an expert witness in emergency and internal medicine. The Graftons' designation of expert witnesses stated that Dr. Carlton's expected testimony would reflect that an earlier diagnosis could have prevented the severe heart attack damage, and that Donald could have been treated that day at SCRMC's emergency room instead of two days later after the most serious damage had occurred.

---

[5] Three one-year lapses in time occurred in which no progress was made in this case with no reasoning provided.

15

¶27. In April 2013, the court entered an agreed scheduling order which declared that all expert witnesses must be designated no later than August 31, 2013. The Graftons designated Dr. Carlton as an expert witness on July 26, 2013, and offered the details of his proposed testimony. The Graftons also stated that they would designate all treating physicians as expert witnesses. The Graftons later became doubtful that Dr. Carlton would be able to testify because he had moved and retired.

¶28. After the expert deadline expired, the Graftons deposed Dr. Mouannes on December 2, 2013. At the deposition, the hospital and counsel for Dr. Mouannes objected to Dr. Mouannes offering his opinion arguing that the hospital did not designate Dr. Mouannes as an expert. The hospital's counsel suggested that the Graftons seek the court's approval to modify the original scheduling order to allow the Graftons to designate an expert cardiologist who could offer an expert opinion regarding the damage to Donald's heart and the long-term outlook for his condition.

¶29. Another lapse in time occurred between 2014 and 2018.[6] After having a new judge appointed, the trial date was continued to January 2019. In May 2018, the Graftons filed a motion to reset the deadline for expert designations. The hospital did not object to the new expert as long as he was promptly designated and did not introduce opinions that were not previously designated for Dr. Carlton. However, the court denied the motion to reset the

---

[6] On February 19, 2014, the trial was continued by agreement of the parties due to Donald being the subject of a federal criminal investigation. Additionally, there was no activity in this case for approximately a year due to the recusal of a newly elected judge.

deadline for expert designations finding that the Graftons did not provide good cause to reset the dates for expert designations after a five-year lapse.

¶30.    Following this denial, on November 5, 2018, the hospital moved for summary judgment arguing that the Graftons would not be able to prove each element of their medical negligence claim by expert testimony as required by Mississippi law. On November 19, the Graftons filed a response in opposition for the motion for summary judgment. The Graftons also accompanied the response with an affidavit of Dr. Carlton that stated:

> Based on my review of documents in this case, my opinion, to a reasonable degree of medical certainty, is that Mr. Grafton was suffering from an acute myocardial infraction when he arrived at the emergency room at SCRMC on March 10. If so, had SCRMC followed the appropriate standard of care and rerun its tests, they would have revealed the myocardial infraction, and he could have been treated that day instead of two days later after the most serious damage had occurred.

¶31.    On July 18, 2019, the court issued an order granting the hospital's motion for summary judgment finding that the Graftons could not prove causation. In its reasoning, the court referenced the proposed testimony of Dr. Carlton from the Graftons' designation of expert witnesses. The trial court further elaborated, "such opinions [of Dr. Carlton] are expressed in terms of a mere possibility rather than a probability which is insufficient to establish causation under Mississippi law." The court did not consider Dr. Carlton's affidavit submitted with the Graftons' response in opposition to summary judgment. Deeming the affidavit inadmissible, the court stated that the Graftons did not have leave to supplement their expert's designation after the deadline for designation of experts.

17

**DISCUSSION**

## I. The expert's supplemental affidavit was timely.

¶32. The trial court erred when it disregarded Dr. Carlton's supplemental affidavit. The court should have taken the timely affidavit into consideration and allowed a jury to determine whether the Graftons had proven causation. In *Young v. Meacham*, 999 So. 2d 368, 370 (¶8) (Miss. 2008), "the defendants filed a motion for summary judgment, arguing, among other things, that the plaintiffs' expert had withdrawn his criticisms and that the plaintiffs' deadline for designating experts had expired[.]" After filing a response, the plaintiffs then filed a supplemental expert designation followed by a second affidavit from the expert that interpreted the EKG. *Id.* at (¶9). The defendants then moved to strike the supplemental expert designation reasoning that no affidavit accompanied the plaintiffs' original response. *Id.* In reversing the grant of summary judgment, our Supreme Court stated, "[t]here is nothing in our rules, absent unusual circumstances and a showing of prejudice, that would prevent a plaintiff from responding to a motion for summary judgment with a supplemental affidavit." *Id.* at 372 (¶17) (citing M.R.C.P. 26(f)).

¶33. The Graftons designated Dr. Carlton as an expert witness. The trial court took only the filed expert designation testimony into account and found that Dr. Carlton did not sufficiently establish causation because his opinion was based a mere possibility rather than a probability. The trial court quoted *Memorial Hospital at Gulfport v. White,* 170 So. 3d 506, 508-09 (¶11) (Miss. 2015), for the principle that, "[a] plaintiff cannot recover by showing a

18

mere possibility of a 'chance of recovery.' . . . [T]he plaintiff must offer proof of 'a greater than fifty (50) percent chance of a better result than was in fact obtained.'"

¶34.    The trial court completely disregarded Dr. Carlton's supplemental affidavit that was included with the Graftons' response to the motion for summary judgment.  The trial court stated, "In response to the motion for summary judgment, the plaintiffs provided an affidavit of Dr. Carlton containing undesignated opinion . . . . The court finds these opinions are inadmissible and therefore it cannot consider them for the purposes of summary judgment."

¶35.    The overarching principle when evaluating whether a party's supplemental response is seasonable is whether the opposing party was unfairly surprised or prejudiced. "Seasonableness must be determined on a case by case basis looking at the totality of the circumstances surrounding the supplemental information the offering party seeks to admit." *Martin ex rel. Heirs of Martin v. B & B Concrete Co.*, 71 So. 3d 611, 618 (¶27) (Miss. Ct. App. 2011) (quoting *Hartel v. Pruett*, 998 So. 2d 979, 985 (¶14) (Miss. 2008)). Our Supreme Court previously held "that an action may not be dismissed for a discovery violation if a party is simply unable to comply, but that dismissal may be justified if the violation is the result of 'willfulness, bad faith, or any fault of the party.'" *Bowie v. Montfort Jones Mem'l Hosp.*, 861 So. 2d 1037, 1042 (¶13) (Miss. 2003) (emphasis omitted) (citing *Fluor Corp. v. Cook*, 551 So. 2d 897, 903 (Miss. 1989)).

¶36.    In *Robert v. Colson*, 729 So. 2d 1243, 1244 (¶1) (Miss. 1999), the plaintiff failed to respond to interrogatories with any expert information.  The plaintiff responded stating, "No

19

decision has been made concerning any experts which may be relied upon. This response will be supplemented at the appropriate time." *Id*. at 1245 (¶13). On March 24, 1997, a hearing was held and trial was set for December 8, 1997. *Id*. at (¶8). Because the plaintiff had failed to identify any experts, the defendant moved to dismiss the case or in the alternative to compel the plaintiff to answer the interrogatory and name an expert. *Id.* at (¶9). On March 25, 1997, the plaintiff filed a supplemental response and identified a physician as an expert and detailed the substance of his proposed testimony. *Id.* The court granted the motion to dismiss because of the untimely supplementation. *Id.* at (¶10). The question on appeal was whether this was an appropriate sanction. The Supreme Court held that it was not and that the dismissal was an abuse of discretion because it has,

> repeatedly held dismissal is to be used as a sanction only as a last resort. Lower courts should be cautious in either dismissing a suit or pleadings or refusing to permit testimony. The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures.

*Id.* at 1247 (¶28) (internal quotation marks omitted) (quoting *Caracci v. Int'l Paper Co.*, 699 So. 2d 546, 556 (Miss. 1997)); *see Pierce v. Heritage Props Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) ("The power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket. Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.").

¶37.     The hospital was not prejudiced by the supplemental affidavit. Rule 4.03(A) of the

Uniform Rules of Circuit and County Court provides, "Absent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial." Dr. Carlton was identified an as expert during the initial expert designations and his proposed testimony was provided by July 31, 2013. Approximately nine months passed between the time the Graftons requested to reset expert designations and the trial date. The hospital could have utilized this time to depose Dr. Carlton. While Dr. Carlton's affidavit followed the discovery and expert designation deadline, it was still submitted in compliance with Rule 56(e) which states:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The affidavit with Dr. Carlton's opinion supplemented his already timely expert designation. Therefore, SCRMC was not prejudiced. Additionally, the trial court's order did not identify any willfulness, prejudice, or any fault of the Graftons. Under these circumstances, the trial court should have determined that Dr. Carlton's affidavit was timely and should have been allowed.

## II.     The expert testimony was sufficient to prove causation.

21

¶38. Additionally, the issue raised before this Court is whether the trial court erred in rendering summary judgment after disregarding the affidavit of the Graftons' expert witness, Dr. Carlton, that was submitted with their response to the motion for summary judgment. Taking the affidavit into account, I am of the opinion that there was a genuine dispute as to causation and this matter should be reversed and remanded for further proceedings.

¶39. In order "to determine if an issue of material fact is genuine, we must decide whether the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Wilson v. State Farm Fire & Cas. Co.*, 761 So. 2d 913, 916 (¶9) (Miss. Ct. App. 2000). In a medical-malpractice action, "the plaintiff bears the burden of producing evidence sufficient to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury." *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). "Therefore, in a summary judgment proceeding, the plaintiff must rebut the defendant's claim (i.e., that no genuine issue of material fact exists) by producing supportive evidence of significant and probative value; this evidence must show that the defendant breached the established standard of care and that such breach was the proximate cause of her injury." *Id.* (emphasis omitted).

¶40. In a medical malpractice case, "expert medical testimony is generally a vital means to the establishment of the plaintiff's prima facie case." *Id.* at 1357 (emphasis omitted). "Medical malpractice cases generally require expert witnesses to assist the trier of fact to understand the evidence." *Id.* "Most importantly, a plaintiff in a medical malpractice case

22

must, through expert testimony, establish the applicable standard of care and a breach of that standard." *Id.* "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Hubbard v. Wansley*, 954 So. 2d 951, 957 (¶12) (Miss. 2007) (citing *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992)).

¶41.    The trial court misinterpreted the law articulated in *White*, 170 So. 3d at 508-09 (¶11), that "[a] plaintiff cannot recover by showing a mere possibility of a 'chance of recovery.' . . . [T]he plaintiff must offer proof of 'a greater than fifty (50) percent chance of a better result than was in fact obtained.'" The trial court improperly concluded that the expert's opinion must include this specific language.  In *Griffin v. North Mississippi Medical Center*, 66 So. 3d 670, 673 (¶9) (Miss. Ct. App. 2011), this Court said, "Stated differently, the plaintiff must show that, absent malpractice, there is a greater than fifty-percent chance that a substantially better result would have followed." Our Court understood this to be the requirement that "the plaintiff must prove that had proper care been administered then it is probable, or more likely than not, that a substantially better outcome would have resulted." *Id.* Therefore, a showing of a "greater than fifty-percent chance" was not required language needed to be articulated by the expert but simply the overall concept that needed to be articulated. The supreme court has held that there is no requirement that an expert use magical language in his testimony, as long as the import of the testimony is apparent. *Vanlandingham v. Patton*, 35 So. 3d 1242, 1249 (¶37) (Miss. Ct. App. 2010).

¶42. The court abused its discretion when it did not allow the Graftons to supplement Dr. Carlton's anticipated testimony. As mentioned, Dr. Carlton's affidavit stated,

> Based on my review of documents in this case, my opinion, to a reasonable degree of medical certainty, is that Mr. Grafton was suffering from an acute myocardial infraction when he arrived at the emergency room at SCRMC on March 10. If so, had SCRMC followed the appropriate standard of care and rerun its tests, they would have revealed the myocardial infraction, and he could have been treated that day instead of two days later after the most serious damage had occurred.

¶43. The affidavit should have been considered because it articulated the requisite standard of care and that such failure to comply with the standard was the proximate cause of the alleged injuries. The Graftons satisfied their burden of producing evidence sufficient to establish all required elements of a medical negligence claim. Furthermore, the supplemental affidavit was submitted timely consistent with precedent such as *Young* and *Robert*. The summary judgment in favor of the hospital should be reversed and this case should be remanded for further proceedings. For the foregoing reasons, I respectfully dissent.

**GREENLEE, McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**