# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01607-COA

KATHRYN KNIGHT, INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE OF THE
ESTATE AND HEIRS-AT-LAW AND/OR
WRONGFUL DEATH BENEFICIARIES OF
EZELL KNIGHT, DECEASED

APPELLANT

v.

TYLER HOLMES MEMORIAL HOSPITAL

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2014 |
| TRIAL JUDGE: | HON. JOSEPH H. LOPER JR. |
| COURT FROM WHICH APPEALED: | MONTGOMERY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CARLOS E. MOORE |
| | TAMEIKA L. BENNETT |
| | TANGALA L. HOLLIS |
| | DARRYL A. WILSON |
| ATTORNEYS FOR APPELLEE: | TOMMIE G. WILLIAMS |
| | TOMMIE G. WILLIAMS JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| TRIAL COURT DISPOSITION: | GRANTED MOTION FOR SUMMARY JUDGMENT |
| DISPOSITION: | AFFIRMED - 09/27/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND JAMES, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    In 2011, Ezell Knight was hospitalized at Tyler Holmes Memorial Hospital (the Hospital) for several months and died in December of that year.  Kathryn Knight, on behalf of Ezell and Ezell's beneficiaries, filed a lawsuit in the Montgomery County Circuit Court against the Hospital on February 13, 2013.  Kathryn asserted that the Hospital failed to

follow proper medical guidelines to treat Ezell and that its failure to do so caused or contributed to Ezell's death. Kathryn timely submitted an unsworn expert designation but later attempted to amend or supplement the designation. The Hospital objected, and filed a motion for summary judgment. Kathryn responded by submitting an additional expert designation and an affidavit without permission from the circuit court. The Hospital moved to strike the designation and the corresponding opinion. The circuit court granted the Hospital's motions while denying Kathryn's. Aggrieved, Kathryn appeals. Finding no error, we affirm.

**STATEMENT OF FACTS**

¶2. Ezell was admitted to the Hospital and remained in its care from July 2011 through October 2011. Kathryn asserts that sometime during Ezell's stay at the Hospital, he developed decubitus ulcers that were associated with his death, which occurred on December 13, 2011. Kathryn claims that the Hospital failed to follow established medical guidelines and protocols for the prevention, diagnosis, and treatment of decubitus ulcers, thereby causing or contributing to Ezell's death.

¶3. After the filing of the underlying lawsuit in the circuit court in 2013, an agreed scheduling order was entered by the circuit court that included a deadline of October 31, 2013, for Kathryn to file her expert designations. Kathryn timely submitted the single unsworn expert designation of Dr. Alain L. Domkam. The designation stated that Dr. Domkam was "expected to testify that . . . Ezell's injuries were caused[] and/or contributed [to] by [the Hospital's] medical negligence in not properly treating . . . Ezell['s] ulcers and/or

2

sores." No corresponding expert affidavit was submitted with the designation.

¶4.     Shortly thereafter, the Hospital requested an extension for its designation of expert witnesses due to the unavailability of necessary medical records. The circuit court granted a one-month extension, and the Hospital timely designated its experts. Approximately three months later, an agreed revised scheduling order was entered that extended the discovery deadline and the motion deadline, but did not address any expert-designation issues.

¶5.     Subsequently, one of the Hospital's experts, Dr. Dan Warlick, was scheduled to be deposed on April 28, 2014. Two weeks prior to the deposition, Kathryn's counsel requested a cancellation. The deposition was rescheduled for May 12, 2014. Dr. Warlick cleared his schedule at work to accommodate the deposition time. At 11 a.m., four hours prior to the deposition, Kathryn's counsel alerted the Hospital by email that the deposition would have to be cancelled again. At that point, it was too late for Dr. Warlick to reschedule patients for the afternoon. Accordingly, Dr. Warlick billed the Hospital for $3,075 of lost revenue. The Hospital soon filed a motion to recover those costs.

¶6.     On May 14, 2014, almost six months after expert designations had closed, Kathryn sought to amend her expert designation or, in the alternative, receive additional time to supplement the designation. While the Hospital did not object to a supplementation from Dr. Domkam, it objected to the designation of any additional experts by Kathryn. Subsequently, the Hospital moved for summary judgment based on the lack of admissible expert proof. The Hospital averred that Kathryn had failed to establish: "(1) the specific duty of care owed by [the Hospital] to Ezell . . . ; (2) how [the Hospital] breached that standard of care; and (3)

3

how the alleged breach of an unarticulated standard of care caused or contributed to any damages alleged to have been sustained by Ezell . . . ."

¶7. In response to the Hospital's motion for summary judgment, and prior to the circuit court's ruling on Kathryn's motion to amend or supplement her expert designation, Kathryn attached a supplemented, amended expert designation and an opinion from a new, previously undisclosed expert – Dr. Darley Solomon. The Hospital quickly moved to strike the amended expert designation and Dr. Solomon's opinion.

¶8. A hearing took place on the parties' outstanding motions on October 14, 2014. The circuit court denied Kathryn's motion to amend her expert designation or supplement the designation, and correspondingly granted the Hospital's motions to strike the untimely amended expert designation and supplemented opinion. The circuit court also granted the Hospital's motion for summary judgment as well as its motion to recover costs from Dr. Warlick's cancelled deposition. Kathryn now appeals, arguing the circuit court erred in denying her motions and granting the Hospital's motions.

## DISCUSSION

### I. Discovery Motions

¶9. The trial court's rulings with regard to Kathryn's motion to amend or supplement her expert designation and the Hospital's motions to strike Kathryn's supplemented expert designation and opinion are discovery judgments. Our supreme court has previously addressed issues regarding expert-designation deadlines in medical-malpractice cases and has consistently held that "[t]he discovery orders of the trial court will not be disturbed unless

4

there has been an abuse of discretion." *Dawkins v. Redd Pest Control*, 607 So. 2d 1232, 1235 (Miss. 1992).

¶10.    In the instant case, Kathryn never presented the circuit court with a plausible reason for why she should have been permitted to amend or supplement her expert designation with new, previously undisclosed experts and opinions.  In her motion to amend or supplement her designations, Kathryn argued that since the discovery deadline had been extended, so too should her expert-designation deadline.  However, no reasons were given for the request. The entirety of Kathryn's motion read as follows:

> The original deadline for Plaintiff[] to designate experts lapsed on October 31, 2013. . . . In compliance with said [o]rder, Plaintiff[] designated [her] expert on or about October 16, 2013. . . . The original discovery deadline also lapsed on March 31, 2014. . . . However, per agreement of the parties, the discovery deadline was extended until June 30, 2014, and said [r]evised [a]greed [s]cheduling [o]rder was entered by this [h]onorable [c]ourt on March 28, 2014. . . . As the discovery period does not expire until June 30, 2014, and Plaintiff[] [is] still in the process of retaining one or more additional experts, Plaintiff[] now seek[s] to amend [her] original expert designation, or in the alternative, to have additional time (until June 30, 2014) to supplement [her] current expert designation. . . . Defendant will suffer no prejudice if Plaintiff[] is granted the relief requested, as Defendant previously requested an extension to file its expert designation, and Plaintiff filed no objection to the same.  As a result, Defendant's [m]otion for [e]xtension of the Defendant's [e]xpert [w]itness [d]esignation [d]eadline was granted by this [h]onorable [c]ourt on December 16, 2013.

¶11.    While Kathryn correctly notes that the Hospital was granted an extension previously, the circumstances are easily distinguished.  The Hospital requested an extension from the circuit court prior to the expert-designation deadline – not after the deadline had passed.  It is within the discretion of the trial judge as to whether a discovery extension should be granted.  As stated by the Mississippi Supreme Court in the similar case of *Bowie v. Montfort*

5

*Jones Memorial Hospital*, 861 So. 2d 1037, 1042 (¶14) (Miss. 2003):

> Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril. *See, e.g.*, *Kilpatrick v. Miss. Baptist Med. Ctr.*, 461 So. 2d 765, 767-68 (Miss. 1984) (held that trial court did not abuse discretion in dismissing case due to failure to comply with pre-rules discovery statutes relating to timely designation of expert witnesses); *Mallet v. Carter,* 803 So. 2d 504, 507-08 (¶¶7-13) (Miss. Ct. App. 2002) (held that trial court did not abuse discretion in dismissing case for failure to timely designate expert witness within the time allowed by the trial court's scheduling order).

¶12. At the hearing on the motions, counsel for Kathryn asserted that since her case was originally under the advisement of a different attorney, the motion to amend or supplement should be granted to allow her current counsel more time to prepare. However, the circuit court responded by pointing out that the agreed scheduling order – entered several months before Kathryn's agreed-upon expert-designation deadline – was signed by Kathryn's current counsel. Hence, counsel knew exactly when the deadlines were set and agreed to the deadlines well before the deadlines approached. Thus, there was no prejudice from the changing of attorneys in Kathryn's case. Kathryn's counsel at the time of the hearing had been involved in the case since at least the time the agreed scheduling order was signed.

¶13. After the hearing, the circuit court entered its order and stated:

> On September 9, 2013, this [c]ourt entered its [a]greed [s]cheduling [o]rder signed by the attorneys for the parties. Contained within said [o]rder, the [P]laintiff's expert[-]witness[-]designation deadline expired on October 31, 2013. Relief from the deadlines contained in the [a]greed [s]cheduling [o]rder may only be obtained by [o]rder of the [c]ourt upon showing of good cause or by agreement of the parties. . . . On May 13, 2014, the [P]laintiff filed her

6

[m]otion to [a]mend Plaintiff's [e]xpert [d]esignation or, in the [a]lternative, [m]otion for [a]dditional [t]ime to [s]upplement Plaintiff's [e]xpert [d]esignation. The [P]laintiff's motion was filed over five (5) months after the deadline for designation of expert witnesses had passed. The [P]laintiff failed to show any excusable neglect as to why the designation of the expert witnesses was not timely filed.

¶14. We agree. Kathryn provided no valid reason for why her expert-designation deadline should have been extended. The only arguments in support of granting the motions consisted of the unfounded issue regarding the change of attorneys and the distinguishable issue regarding the Hospital's request and receipt of a similar extension prior to the date on which its expert-designation deadline would have passed. We cannot find that the circuit court abused its discretion in determining that neither argument constituted reason enough to grant the motion to amend or supplement expert designations. It follows then that the circuit court did not err in granting the Hospital's motions to strike Kathryn's submissions of an amended expert designation and expert opinion. These issues are meritless.

## II. Motion for Summary Judgment

¶15. We review a circuit court's grant or denial of summary judgment under a de novo standard. *Vicksburg Healthcare v. Dees*, 152 So. 3d 1171, 1173-74 (¶8) (Miss. 2014). "If no genuine issue of material fact exists to be resolved, then summary judgment shall be granted, as a matter of law, in favor of the movant." *Id*. at 1174 (¶8) (citations omitted). A circuit court may review "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," to determine if a genuine issue of material fact exists. M.R.C.P. 56(c). Additionally, it is well settled:

[I]n cases involving claims of medical malpractice, the plaintiff must prove the

7

following elements in order to establish a prima facie case:

(1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury;

(2) a failure to conform to the required standard; and

(3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.

*Vicksburg Healthcare*, 152 So. 3d at 1174 (¶9) (citation omitted). Furthermore, a plaintiff is required to prove the elements by expert testimony in order to survive summary judgment. *Johnson v. Pace*, 122 So. 3d 66, 68 (¶8) (Miss. 2013) (citations omitted).

¶16. We have previously established that the circuit court did not err in excluding the affidavit of Dr. Solomon. Hence, the only expert information available to prove the necessary elements of Kathryn's case was that of Dr. Domkam's designation. In the expert designation, Dr. Domkam was identified as being aware of Ezell's conditions upon his admission to the Hospital. Dr. Domkam's understanding of the specifics of Ezell's illnesses was listed with specificity. The designation goes on to state:

> Dr. Domkam is also expected to testify that Plaintiff underwent treatment at [the Hospital] from approximately 9/6/11-9/13/11. Finally, Dr. Domkam is expected to testify that Plaintiff Ezell's injuries were caused, and/or contributed [to], by the Defendant's medical negligence in not properly treating Plaintiff Ezell's ulcers and/or sores. The specific findings and opinions relative to . . . Plaintiff Ezell's treatment and diagnoses are contained in Plaintiff Ezell's medical records, which have been previously provided to Defendant. Dr. Domkam reserves the right to supplement his reports should additional information become available.

¶17. At no point does the designation address the duty of care owed by the Hospital to Ezell in light of his injuries. Likewise, the designation fails to shed light on how the Hospital

breached a duty of care. Instead, the designation jumps ahead to provide a blanketed statement that Dr. Domkam was expected to testify that the Hospital caused or contributed to Ezell's death.

¶18. Moreover, there was no accompanying sworn affidavit submitted with the designation or at anytime thereafter from Dr. Domkam. Again, it is without question that "[i]n medical[-] malpractice cases, expert testimony is essential to proving that a prima facie case exists, because the expert's testimony demonstrates how the required standard of care was disregarded, and the testimony certifies that the defendant's failure was the proximate cause, or proximate contributing cause of the injury." *Vicksburg Healthcare*, 152 So. 3d at 1174 (¶10) (citation and quotation omitted). The supreme court has clearly stated that the failure to provide sworn expert testimony in medical-malpractice cases requires that summary judgment be granted. *Id*.

¶19. The lack of sworn testimony establishing the applicable standard of care and the Hospital's breach did not go unnoticed by the circuit court. In its order granting summary judgment, the circuit court said: "Nothing exists in the record before the [c]ourt to establish the standard of care or any breach thereof." The circuit court went on to note: "Without an expert witness to testify against [the Hospital] as to the standard of care or any breach thereof, the plaintiff cannot establish the standard of care which applied in this case or any breach thereof." Having reviewed the record before the circuit court at the time summary judgment was considered, we agree with the circuit court's determination. The lack of sworn expert testimony supporting all elements of Kathryn's medical-malpractice claim proved fatal

to the summary-judgment attack. This issue is without merit.

### III. Motion to Recover Deposition Costs

¶20. Finally, we address the circuit court's grant of the Hospital's deposition reimbursement request for Dr. Warlick after Kathryn cancelled the deposition by email a mere four hours prior to the start of the deposition. The Hospital correctly notes that Kathryn fails to cite any authority in her appellate brief regarding this issue. It is well-settled law that failure to support an issue on appeal with authority is a procedural bar, and a reviewing court is not required to consider the claim. *United Plumbing & Heating Co. v. Mosley*, 835 So. 2d 88, 92 (¶8) (Miss. Ct. App. 2002) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1075 (¶65) (Miss. 2000)).

¶21. Here, Kathryn's entire argument on appeal regarding the circuit court's grant of deposition reimbursement reads as follows:

> During the course of discovery in this matter, Appellant requested to take the deposition of Dr. Dan Warlick. However, in the midst of rescheduling Dr. Warlick's deposition, Appellant filed a [m]otion to [a]mend Plaintiff['s] [e]xpert [d]esignation, or in the [a]lternative, [m]otion for [a]dditional [t]ime to [s]upplement Plaintiff['s] [e]xpert [d]esignation. Thus, in the interest of efficiency, it was more prudent to postpone Dr. Warlick's deposition at this time, instead of proceeding forward with it, and later determining it was unnecessary. On or about April 29, 2014, Appellant re-noticed a deposition for Dr. Warlick. However, due to timing conflicts, Appellant re-noticed the deposition for a later time on May 12, 2014.
>
> On the morning of the deposition, Appellee's counsel was notified on the cancellation via email four (4) hours prior to its start. It is clear that the Appellee suffered no prejudice as a result of the cancellation. Further, Appellant did not violate any [c]ourt [o]rder or discovery rule[] in cancelling the deposition. An allegation of inconvenience to Dr. Warlick does not warrant the granting of Appellee's motion. Appellee failed to demonstrate any level of undue prejudice, or irreparable harm to the Appellee[] resulting from

10

the cancellation of Dr. Warlick's deposition. As a result, this Court should reverse the ruling of the lower court on Appellee's [m]otion for [o]rder [c]ompelling [p]ayment.

¶22. As stated previously, Kathryn failed to cite any authority whatsoever in support her contentions that the circuit court's judgment should be reversed with regard to the deposition costs. Moreover, after the Hospital noted Kathryn's lack of authority in its appellate brief, Kathryn still failed to amend the problem in her reply brief. In fact, the section regarding this issue in Kathryn's reply brief is a word-for-word repetition of the exact same argument contained in her primary brief – an identical copy of the two paragraphs listed above.

¶23. We stand firm in our long-held assertion that "failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment." *Id*. (citations omitted). Kathryn's assertions with regard to this issue are legally insufficient. Hence, we refuse to overturn the circuit court's judgment.

¶24. As such, we affirm.

¶25. **THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., NOT PARTICIPATING.**

11