# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01168-COA

**RECHELLE BROOKS, ON BEHALF OF J.S., III,**          **APPELLANT**
**A MINOR**

**v.**

**NATCHEZ HOSPITAL COMPANY, LLC D/B/A**          **APPELLEE**
**MERIT HEALTH NATCHEZ**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/02/2024 |
| TRIAL JUDGE: | HON. DEBRA W. BLACKWELL |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LARRY STAMPS |
| | ANITA M. STAMPS |
| ATTORNEY FOR APPELLEE: | MARK P. CARAWAY |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 06/09/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND LASSITTER ST. PÉ, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A trial court granted summary judgment after a mother failed to designate an expert in her minor son's medical malpractice case. On appeal, the mother argues that a continuance of trial and extension of time should have been granted for discovery. Further, she argues that the evidence in the record was sufficient alone to establish liability.

¶2. Since a medical malpractice action requires expert proof, and no expert was designated, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     After seven-year-old J.S.[1] refused to eat, slept all day, and complained of stomach pain for several days, his mother, Rechelle Brooks, took him to the emergency room at Merit Health Natchez.

¶4.     At check-in, J.S. was taken back for testing where it was determined he was in need of an emergency appendectomy for a ruptured appendix. J.S. was admitted to MHN by his primary pediatrician, and the on-call general surgeon was consulted to operate.

¶5.     The initial CT scan only showed a perforation. But during surgery, the doctor encountered intestinal bacteria and pus, which caused sepsis. J.S. also had a gangrenous appendix. So, J.S.'s appendix was removed, and his abdominal cavity drained and cleared of contaminated fluid.

¶6.     Over the course of the next few days, J.S. received IV antibiotic therapy and liquids, and had his white blood cells, lab work, vital signs, and temperature monitored.

¶7.     J.S. initially began to improve. But spikes in his temperature plus nausea and vomiting led the doctors to order a CT scan. The scan indicated an abscess in his abdominal wall.

¶8.     The doctors determined that J.S. should be transferred to the University of Mississippi Medical Center in Jackson for more specialized care. While awaiting transfer to UMMC, Brooks—who had been with J.S. throughout his entire hospital stay—found her son "laying in a puddle of foul-smelling, bloody fluid."

---

[1] We use initials to protect the child's privacy.

¶9. J.S. was taken by ambulance to UMMC where a second abscess was discovered. He underwent additional surgery and recovery, and was not discharged until weeks later.

¶10. Subsequently, Brooks filed a lawsuit against MHN, alleging medical negligence and breach of warranty. She claimed that her son was not sufficiently monitored by the hospital after his initial surgery to prevent further infection. This supposedly resulted in his extended hospital stay, expenses, and pain and suffering.

¶11. Brooks received two extensions of time for service of process. So, MHN was served with the complaint almost a year later. MHN answered with a motion to dismiss based on the statute of limitations, which was denied by the court. Discovery commenced in November 2022 with written discovery and depositions continuing through April 2024.

¶12. After nearly a year and a half of discovery, Brooks filed a motion for trial setting. In response, the trial court entered the following scheduling order:

1. This matter is set for a jury trial on October 15, 2024;
2. Discovery shall be completed on or before July 31, 2024;
3. Plaintiffs shall designate expert witnesses on or before June 17, 2024;
4. Defendant shall designate expert witnesses on or before July 17, 2024[.]

¶13. Brooks did not designate an expert on the due date for expert designation. Instead, she filed a motion for an extension of time to designate an expert. Counsel for Brooks stated that "Plaintiff's expert requires more time to complete his opinion."

¶14. MHN timely filed its expert designation, and just over a month later, on August 23, 2024, MHN filed its motion for summary judgment. MHN argued that Brooks "failed to

3

offer [expert] proof of two required elements of the cause of action[,]" therefore, her medical negligence claim could not be established as a matter of law.

¶15.    Brooks replied with a Rule 56(f) motion for continuance in order to prepare a fuller response.

¶16.    At the hearing on this matter, Brooks' motion for continuance was denied. The trial court also granted summary judgment in favor of MHN, finding "insufficient expert opinion evidence to create a jury issue on the questions of . . . negligen[ce] or proximate[] cause[.]" Brooks now appeals the trial court's dismissal.

## STANDARD OF REVIEW

¶17.    A trial court's denial of a motion for a continuance is reviewed using an abuse of discretion standard. *O'Hea v. George Reg'l Health & Rehab. Ctr.*, 276 So. 3d 1266, 1269 (¶6) (Miss. Ct. App. 2018). "'The decision to grant or deny a continuance is within the sound discretion of the trial court and will be reversed solely where the court abuses that discretion.'" *Id*. (quoting *Owens v. Thomae*, 759 So. 2d 1117, 1120 (¶10) (Miss. 1999)).

¶18.    "A trial court's grant of summary judgment is reviewed de novo." *Johnson v. Pace*, 122 So. 3d 66, 68 (¶7) (Miss. 2013). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

## DISCUSSION

4

**I.     The trial court did not abuse its discretion in denying the motion for a continuance.**

¶19.    The trial court denied Brooks' motion for a continuance in its final judgment when the motion was found "not well taken pursuant to Rule 56(f) of Mississippi Rules of Civil Procedure." Brooks argues that it was an abuse of discretion to deny her motion.

¶20.    Rule 56(f) vests trial courts with the authority to grant "a continuance and additional time to respond to a summary judgment motion when an opposing party shows a need for additional information in order to respond[.]" *Robinson v. S. Farm Bureau Cas. Co.*, 915 So. 2d 516, 520 (¶10) (Miss. Ct. App. 2005). Rule 56(f) states that the court "*may* order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or *may* make such order as is just." M.R.C.P. 56(f) (emphasis added). Such discretion to grant or deny is left specifically to the trial court. *See Stallworth v. Sanford*, 921 So. 2d 340, 342-43 (¶9) (Miss. 2006) (holding "A trial court has sound discretion to grant or deny a continuance under Rule 56(f)").

¶21.    When a "party mak[es] a Rule 56(f) motion [they] 'must present specific facts why [they] cannot oppose the motion and must specifically demonstrate how postponement of a ruling on the motion will enable [them], by discovery or other means, to rebut the movant . . . .'" *Davis v. Hindman*, 138 So. 3d 214, 217 (¶10) (Miss. Ct. App. 2014) (internal quotation mark omitted).

¶22.    We have consistently held that "Rule 56(f) works as a safety valve when a nonmovant is unable to respond to summary judgment motions due to delays in discovery not fully

within their control." *Phillips v. Delta Reg'l Med. Ctr.*, 290 So. 3d 386, 391 (¶18) (Miss. Ct. App. 2020). But, "Rule 56(f) does not protect dilatory litigants." *Id.*

¶23. We considered this issue in *Phillips*, a medical malpractice case where the trial court denied a request for a continuance under Rule 56(f). *Id.* We found that the trial court was within its discretion to deny the motion because "[t]he life span of the case was 393 days from its filing . . . to the motion hearing" and the plaintiff "never sent a single interrogatory, request for production, or request for admission" or "notice any depositions or subpoena any parties[.]" *Id.*

¶24. The life span in this case is *more* than quadruple that of *Phillips*. Brooks filed her lawsuit in 2020, with the summary judgment hearing being held in fall 2024—a total of 1,614 days. Even though the trial court did not enter a scheduling order until spring 2024, the discovery phase of Brooks' case lasted well over a year and a half.

¶25. Yet, the Uniform Civil Rules of Circuit and County Court provide that "[a]ll discovery must be completed *within ninety days* from service of an answer by the applicable defendant." UCRCCC 4.03(A) (emphasis added). While "[a]dditional discovery time *may* be allowed," it may only be done "with leave of court upon written motion setting forth *good cause for the extension*." *Id.* (emphasis added). "[T]rial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril." *Bowie v. Montfort Jones Mem'l Hosp.*, 861 So. 2d 1037, 1042 (¶14) (Miss. 2003).

¶26. Brooks asserts that additional time was needed to complete discovery, but she does not have good cause for an extension. The doctor and nurses Brooks wished to depose were all known to her as potential fact and expert witnesses from the outset of the case.

¶27. Further, when Brooks requested this extension, she did so on the date that the expert designation was due and without an affidavit.

¶28. "Pursuant to Rule 56(f), 'the movant must file an affidavit in support of [her] motion seeking a continuance to allow additional discovery[.]'" *Mixon v. Berry*, 351 So. 3d 983, 990 (¶19) (Miss. Ct. App. 2022) (quoting *Rainer v. River Oaks Hosp. LLC*, 282 So. 3d 751, 757 (¶21) (Miss. Ct. App. 2019)). "[H]owever, a lack of an 'affidavit is not fatal . . . if . . . the party opposing summary judgment had been diligent and has acted in good faith.'" *Id.*

¶29. While Brooks' request for an extension was timely, it was not diligent. Brooks failed to cure the continuing designation deficiency during the three month time span the parties had before oral argument on the summary judgment motion.

¶30. At the hearing on this matter, counsel for Brooks stated that "[w]e did attempt to schedule that deposition but we've had difficulty trying to do that[.]" But, without an affidavit in the record to confirm the expert's unavailability or Brooks' "good cause" inability to schedule a deposition for *any* potential expert for that matter, Brooks' motion for additional time was unsupported.

¶31. Brooks' discovery efforts were dilatory given the time span of the case. She indicated to the trial court that she had an expert, but never designated one. She further failed to

7

demonstrate to the trial court what subjects this purported expert's testimony would satisfy.

¶32.   As a result, the trial court was within its discretion to deny the motion.

**II.    The trial court properly granted summary judgment for failure to designate an expert in a medical malpractice case.**

¶33.   Brooks argues that the trial court improperly granted MHN's motion for summary judgment regardless of her failure to provide expert testimony in support of her medical malpractice claims.  However, the failure to designate an expert is fatal in this case.

¶34.   "[T]o survive summary judgment in medical-malpractice cases, plaintiffs are *required* to produce expert testimony in order to establish a prima facie case." *Lakeland Premier Women's Clinic PLLC v. Jackson*, 426 So. 3d 1062, 1065 (¶9) (Miss. 2025) (emphasis added).  "Expert testimony is *essential* to establish these elements, and without it, summary judgment generally must be granted." *Id.* (emphasis in original).

¶35.   As a medical-malpractice plaintiff, Brooks was required to designate an expert.  Yet she never designated one.  Indeed, counsel for Brooks even told the trial court during the summary judgment hearing, "I'm not so keen on hiring experts."

¶36.   Nevertheless, Brooks insists that she can establish the standard of care element through the testimonies of the doctors who treated the minor at MHN and who were designated by the defense.  She further contends that the remaining elements of malpractice can be proved using the surrounding circumstances and lay testimony.

¶37.   Brooks' case is similar to a previous case decided by this Court where a plaintiff sued her dentist for malpractice.  *Cates v. Woods*, 169 So. 3d 902 (Miss. Ct. App. 2014).  Cates

8

claimed she suffered neck injuries after a dental technician's forceful and improper removal of her dental impressions. *Id.* at 904 (¶4). She attempted to establish the elements of her claim by first arguing that her dentist "'conceded and admitted' that the standard of care would never permit such force . . . to be used[.]" *Id.* at 907 (¶12). Second, that under the layman's exception "her own testimony and medical records establish[ed] breach, causation, and injury." *Id.* at 907, 909 (¶¶12, 21).

¶38. However, this Court held that even if the standard of care element was met, expert-witness testimony rather than lay opinion was necessary "to provide the link between the perceived breach and her injuries." *Id.* at 910 (¶23). The same holds true here—Brooks cannot establish her malpractice claim with lay testimony.

¶39. It is not disputed that the standard of care could be established by Brooks' use of MHN's medical experts. Mississippi law provides that a plaintiff "may utilize the defendant himself as a source of proof of the standard of care." *Meena v. Wilburn*, 603 So. 2d 866, 870 n.9 (Miss. 1992).

¶40. But, Brooks' proof of negligence must not stop there. To prevail, she is required to prove all of the elements of her medical malpractice claim. That is

> (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury;
> (2) a failure to conform to the required standard; and
> (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant.

*Williams v. Manhattan Nursing & Rehab. Ctr. LLC*, 148 So. 3d 20, 22 (¶10) (Miss. Ct. App.

2014).

¶41.    In this instance, "[n]ot only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *McDonald v. Mem'l Hosp. at Gulfport*, 8 So. 3d 175, 180 (¶12) (Miss. 2009) (quoting *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992)).

¶42.    So it is clear Brooks must establish, by expert testimony, a breach of care. But the record does not reflect that the healthcare providers at MHN ever alleged a breach of the standard of care, let alone a causal link to the purported breach and the minor's injuries.

¶43.    In fact, the surgeon who operated on J.S. testified in his deposition that "[the] patient can still form an abscess postoperatively because of the degree of contamination that was already there, no matter what you do." He explained it was expected that "with that degree of contamination, that's the cause of the 20 to 30 percent chance of a wound infection."

¶44.    The minor's pediatrician stated under oath that due to "some debris around the appendix with inflammation in the fluid . . . there was a concern that he may not recover fully after the appendectomy." And the night nurse monitoring the minor stated in her deposition, "I'm not a doctor, but typically when you have an infection all in your abdomen, it can spread to other areas[.]" She elaborated that to try and prevent another infection, "[h]e was getting antibiotics. . . . However they were ordered, we were giving them."

¶45.    We find that Brooks' malpractice claim fatally lacked required expert testimony on

several elements that could not be acquired from the defense's experts.

¶46. Brooks failed to designate an expert. Therefore, summary judgment was properly granted.[2]

## CONCLUSION

¶47. The trial court acted within its discretion when it denied Brooks' motion for a continuance and granted summary judgment in favor of MHN. Therefore, we affirm both rulings.

¶48. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION. McDONALD, J., NOT PARTICIPATING.**

**WESTBROOKS, J., DISSENTING:**

¶49. Because I believe the trial court abused its discretion in denying the Plaintiff's request

---

[2] Alternatively, Brooks seeks to have this Court reverse summary judgment on her breach of warranty claim. We find this claim is waived as she did not cite authority for reversal. *See* M.R.A.P. 28(a)(7) (requiring that the claims of a litigant are supported with "citations to the authorities, statutes, and *parts of the record relied on*.") (emphasis added). For "[f]ailure to comply . . . renders an argument procedurally barred." *Nevels v. Miss. Dep't of Emp. Sec.*, 39 So. 3d 995, 997 (¶10) (Miss. Ct. App. 2010). Nonetheless, we also find her argument is without merit. Brooks alleges MHN breached its warranty of care when it failed to provide "adequate, safe, and proper care." This claim is duplicative of her medical malpractice theory, and as already discussed, expert testimony is required to prove medical malpractice. Moreover, "[a] jury may not presume negligence because of unsuccessful results of surgery." *Phillips v. Hull*, 516 So. 2d 488, 494 (Miss. 1987) (quoting *Ross v. Hodges*, 234 So. 2d 905, 909 (Miss. 1970)), *overruled on other grounds by Whittington v. Mason*, 905 So. 2d 1261, 1266 (¶¶21, 28) (Miss. 2005). Without expert designation, Brooks' breach of warranty claim faces the same fate as her negligence claim.

for an extension of time to designate her expert, I offer my dissent. Under Mississippi law, when a plaintiff fails to timely designate an expert to support a medical malpractice claim, dismissal of the claim and affirmance of summary judgment in the defendant's favor is often proper. However, when the plaintiff has made a timely motion, denial of the motion can be an abuse of discretion, particularly when the "request for a continuance [is] reasonable and consistent with Rule 56(f)'s purpose of preventing a premature grant of summary judgment[.]" *Stanley v. Scott Petroleum Corp.*, 184 So. 3d 940, 943 (¶7) (Miss. 2016) (reversing a denial of a motion for a continuance as an abuse of discretion).

¶50.    In this case, the Plaintiff timely moved for an extension of time to designate her expert, and also moved for a continuance as part of her opposition to the Defendant's motion for summary judgment. While the extension was requested on the day the expert designation was due, June 17, 2024, it is worth noting that the only scheduling order in the case had been signed and entered on May 31, only eighteen days prior to the Plaintiff's deadline to designate an expert. The deadline for the Defendant's expert designation was thirty days following the Plaintiff's deadline. I note that our precedent has affirmed extensions granted to civil defendants even when the motion for a continuance was made past the designation deadline. *Harris v. Ratcliff*, 391 So. 3d 207, 212 (¶12) (Miss. Ct. App. 2024), *cert. denied*, 391 So. 3d 819 (Miss. 2024); *Knight v. Tyler Holmes Mem'l Hosp.*, 201 So. 3d 1088, 1090-91 (¶10) (Miss. Ct. App. 2016). Yet, our courts have affirmed the denial of similar motions made by plaintiffs in civil matters. *Swafford v. Manejwala*, 210 So. 3d 1007, 1008 (¶1) (Miss.

Ct. App. 2015). Timely filed motions for extensions of time protect a party's ability to fully and fairly present its case and provide assurance of the orderly progression of litigation. A timely filing is a proactive approach on the part of a party to signal that it is promoting consistency, diligence, and candor during the litigation. The neutral role of our trial courts as facilitators of the pre-trial process should not result in a system that moves the line for some but keeps the line sternly steadfast for others, particularly when dismissal, the harsh consequence of granting summary judgment, is on the line. I therefore respectfully dissent.